UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GARY AND SANDRA WILLSCH, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED**<br><br>        **Plaintiffs,**<br>**v.**<br><br>**NATIONWIDE INSURANCE COMPANY OF AMERICA**<br><br>        **Defendant.** | **Civil Action No: 09 5276** |

### MEMORANDUM OF LAW IN SUPPORT OF NATIONWIDE INSURANCE COMPANY OF AMERICA'S SEPARATE MOTION FOR SUMMARY JUDGMENT

Defendant Nationwide Insurance Company of America ("NICOA") respectfully submits this Memorandum of Law in Support of its Separate Motion for Summary Judgment. In addition, NICOA joins in the Joint Motion and Memorandum submitted on behalf of all Defendants ("Joint Memorandum") and hereby incorporates the arguments in the Joint Memorandum as though fully set forth herein.

### I. OVERVIEW

Plaintiffs Gary and Sandra Willsch ("Mr. and Mrs. Willsch" or "Willsch") allege that Nationwide Insurance Company of America ("NICOA") failed to provide them with a passive anti-theft premium discount ("Passive Anti-Theft Discount") purportedly mandated by the Pennsylvania Motor Vehicle Financial Responsibility Act ("MVFRL"), 75 Pa. C.S.A. § 1799.1, in connection with two vehicles insured under Mr. and Mrs. Willsch's automobile insurance policy (no. 58-37-D-674202) with NICOA (the "Willsch Policy"). *See Willsch v. Nationwide Ins. Co. of America* Class Action Complaint. The *Willsch* Complaint is based on the flawed premise that NICOA "is required to provide the anti-theft discount without requiring any input from an applicant whose car has an anti-theft device as part of its standard equipment." *Id.* at ¶ 18. Mr.

1

and Mrs. Willsch aver that as NICOA "requires standard information on the make, model, and year of the vehicle to be insured," and "[k]nowing this information in respect to Plaintiffs meant that either [NICOA] knew that Plaintiffs' cars qualified for the anti-theft discount, or it recklessly or negligently ignored that fact." *Id.* at ¶ 17.

## II.   STATUTORY REQUIREMENTS

The applicable statutory provisions providing for the passive anti-theft device discount in Pennsylvania are part of the Motor Vehicle Financial Responsibility Law ("MVFRL"), which was made effective July 1, 1990. See 75 Pa. C.S. § 1799.1; P.L. 11, No. 6, eff. July 1, 1990. The statute states that:

> All insurance companies authorized to write private passenger automobile insurance within this Commonwealth shall provide premium discounts for motor vehicles with passive antitheft devices. These discounts shall apply to the comprehensive coverage and shall be approved by the commissioner as part of the insurer's rate filing, provided that such discounts shall not be less than 10%. Some or all of the premium discounts required by this subsection may be omitted upon demonstration to the commissioner in an insurer's rate filing that the discounts are duplicative of other discounts provided by the insurer.

75 Pa. C.S. § 1799.1(a).

Furthermore, a "passive antitheft device" is defined as:

> Any item or system installed in an automobile which is activated automatically when the operator turns the ignition key to the off position and which is designed to prevent unauthorized use, as prescribed by regulation of the commissioner. The term does not include an ignition interlock provided as a standard antitheft device by the original automobile manufacturer.

Id. at § 1799.1(b). Although the statute refers to regulations to be prescribed by the Commissioner, the Commissioner has not established regulations pertaining to the passive anti-theft device discount.

Pursuant to 75 Pa. C.S. § 1791.1(c), Insurers are required to notify policyholders of the availability of the passive anti-theft device discount at the time of application and with each policy renewal:

> Except where the commissioner has determined that an insurer may omit a discount because the discount is duplicative of other discounts or is specifically reflected in the insurer's experience, at the time of application for original coverage and every renewal thereafter, an insurer must provide to an insured a notice stating that discounts are available for drivers who meet the requirements of section[] . . . 1799.1. . . .

75 Pa. C.S. § 1791.1(c). The statute does not prescribe the form or wording of the required notices. Sections 1799.1 and 1791.1(c) do not specify any procedures for determining whether a particular policyholder qualifies for an anti-theft device discount beyond the requirement to supply the required notice. NICOA addresses its statutory obligations in the Joint Motion and Memorandum.

### III.   NICOA'S PRACTICES AND PROCEDURES FOR COMPLYING WITH APPLICABLE STATUTES

NICOA's rate filings with the Pennsylvania Insurance Department in effect during the Willsch policy periods refer to a passive anti-theft device discount, which was approved by the Insurance Commissioner. The criteria for the discount, as set forth in NICOA's Agent's Portfolio, is as follows:

**ANTI-THEFT DEVICE DISCOUNT**

A 10 percent discount (multiply by .90) in Comprehensive premium is applicable for vehicles equipped with the following anti-theft device:

A passive anti-theft device is one that is engaged automatically when the operator turns the ignition switch to the off position. (A separate manual step is not required to engage the device) The device must disable the vehicle by making the fuel, ignition, or starting system inoperative.

> Ignition interlock systems (mechanism that locks the steering column when the key is removed) do not qualify for the discount.
>
> This rate factor is applicable to the following vehicle types: PPA, MH, AC-Reg, and AC-Res.

NICOA Stmt. of Undisputed Facts, ¶ 1.

At the time of their application for insurance and at every renewal, NICOA provides consumers with a "Notice of Availability" that states:

> ### PREMIUM DISCOUNTS
>
> Premium may be reduced for the installation of certain safety devices in a motor vehicle or for successful completion of a driver improvement course.
>
> \*   \*   \*
>
> - **PASSIVE ANTITHEFT DEVICES** — Any item or system installed in an automobile which is activated automatically when the operator turns its ignition to the off position and which is designed to prevent unauthorized use. This does not include an ignition interlock provided as a standard antitheft device by the original automobile manufacturer. A discount applies to compre[h]ensive coverage.
>
> \*   \*   \*
>
> ### ASSISTANCE
>
> If you have any questions or need any help in selecting the protection you want, believe you qualify for discounts or wish to discuss your insurance program, your Nationwide Agent will be able to assist you.
>
> Please keep this information with your policy should you need it later.

*See id.* at ¶ 2.

**IV.   NICOA'S PRACTICES FOR APPLYING THE PASSIVE ANTI-THEFT DEVICE DISCOUNT**

For automobile policies issued by NICOA in Pennsylvania, agents utilize the Agency Online Access ("AOA") system.[1] *See id.* ¶ 5. The AOA system is utilized by agents to provide underwriting information to NICOA that an agent has obtained from policyholders in order to quote insurance premiums, submit policy applications, and bind automobile policy coverage. *See id.* at ¶ 7. As part of the AOA system, the agent is presented with a series of screens the agent must complete to move through the bid and application process. *See id.* at ¶ 9. The AOA screen associated with the Pennsylvania antitheft discount is titled "ANTI-THEFT DEVICES" and is reflected below:



---

[1] In addition to the AOA system, NICOA also has a web-based application available to consumers through the Internet from which they may purchase insurance. This generates only a small fraction of NICOA's business. Internet-based business is primarily sold without the assistance of an agent. It amounts to roughly 1% of NICOA's business in Pennsylvania. *See* NICOA Stmt. of Undisputed Facts, ¶ 5, fn. 1.

5

The agent, with information provided to the agent by the policyholder, must select one of two options for the field for "AT": "00 – NO DISCOUNT" or "10 – 10% DISCOUNT." AOA also instructs the agent "SEE PORTFOLIO FOR DETAILS." Entering this information is mandatory; an agent must enter a "00" or "10" in the field to move forward with the quote. *See id. at* ¶ 11. To support an anti-theft discount, agents are also trained to request what NICOA calls "trailing documents." *See id.* at ¶ 12. The preferred trailing documentation is a copy of the insured vehicle's owner's manual. *See id.* at ¶ 13. NICOA's practice requires that trailing documents are kept by the agent. *See id.* at ¶ 14.

## V.   FACTUAL BACKGROUND FOR WILLSCH

Mr. Willsch is a licensed private investigator, licensed in Pennsylvania, New York and New Jersey. He specializes in the investigation of motor vehicle accidents and has testified professionally regarding his investigation of motor vehicle accidents. *See id.* at ¶ 15. He is familiar with the general features of an automobile, including anti-theft devices. *See id.* at ¶ 16. He has attended training classes on topics relating to the investigation of automobile accidents such as the determination of automobile crush zones and forces of impact. *See id.* at ¶ 17. He has investigated information about certain vehicles as to their construction and specifications. *See id.* at ¶ 18. He describes himself as starting in the automotive business when he was in the sixth grade and was associated with automotive businesses his father owned. *See id.* at ¶ 19.

On March 7, 2005, Mr. Willsch applied for private passenger automobile insurance with NICOA to insure a 2004 Ford Explorer and a 2004 Ford Expedition. *See id.* at ¶ 21. The

Willschs obtained the NICOA automobile insurance policy through Zeiler Insurance Agency ("Zeiler") and interacted with Colleen Stool[2] an employee of Zeiler. *See id.* at ¶ 22.

When applying for coverage, Mr. Willsch met with Colleen at the Zeiler offices in Stroudsburg, Pennsylvania. *See id.* at ¶ 23. Mr. Willsch does not recall if he was asked if the 2004 Expedition and 2004 Explorer had antitheft devices, and does not recall if he was asked about discounts pertaining to his vehicles during the application process. *See id.* at ¶ 24. He does not "think" that his conversation in applying for insurance "got into the specificity of money or anything like that." *See id.* at ¶ 25. The insurance application was completed based upon Mr. Willsch's responses to questions asked by Colleen and was signed by Mr. Willsch. *See id.* at ¶ 26. Mr. Willsch also testified that when he initially applied for insurance with NICOA, he knew that the 2004 Ford Explorer and the 2004 Ford Expedition had anti-theft devices. *See id.* at ¶ 27.

At the time of the application for insurance, Mr. Willsch was provided with the "Notice of Availability" form outlined above providing notice of the passive anti-theft device discount *See id.* at ¶ 28. At his deposition, Mr. Willsch acknowledged that the "Notice of Availability" form provides notice to consumers of the availability of anti-theft discounts. *See id.* at ¶ 29. Mr. Willsch also acknowledged that the "Notice of Availability" form instructs policyholders to contact their agent if they believe that they are entitled to an anti-theft discount. *See id.* at ¶ 30.

Mrs. Willsch has no role in purchasing insurance. *See id.* at ¶ 31. She relies on information from her husband with respect to her insurance with Nationwide. *See id.* at ¶ 33. Both the 2004 Ford Explorer and 2008 Ford Expedition are owned by Mr. Willsch. *See id.* at ¶ 34.

---

[2]   Mr. Willsch explained that "Stool" is Colleen's maiden name but he does not know her married name, and that he had known Colleen since he and Colleen attended the same high school. *See* May 26, 2010 Deposition Transcript of Gary Willsch, attached hereto as Exhibit "K," at p. 17 lines 19-23.

Willschs' application was accepted by NICOA, and the Willsch Policy was issued for the period from March 7, 2005 to September 7, 2005. *See id.* at ¶ 35. The Willsch Policy was renewed for six subsequent periods from September 7, 2005 through September 7, 2008. *See id.* at ¶ 36.

On or about April 18, 2008, Mr. Willsch traded in the 2004 Ford Expedition and replaced it with a 2008 Ford Expedition. *See id.* at ¶ 37. He notified NICOA within days of the trade-in by once again contacting Colleen Stool at the Zeiler, this time by phone, and later provided Colleen with the "window sticker" for the new 2008 Expedition. *See id.* at ¶ 38.

Mr. Willsch possesses owners' manuals for the 2008 Expedition and 2004 Explorer. *See id.* at ¶ 39. Both manuals indicated that the vehicles contained devices known as "Securilock Anti-Theft Systems." *See id.* at ¶ 40. Mr. Willsch acknowledged that both vehicles contained anti-theft indicator lights on the dashboard alerting drivers of the existence of anti-theft devices in the vehicles. *See id.* at ¶ 41.

Prior to the April 18, 2008 change where the 2008 Ford Expedition was added to the Willsch Policy in place of the 2004 Ford Expedition, the policy was renewed six times. *See id.* at ¶ 42. The Willsch Policy was then renewed for at least four additional renewal periods between September 7, 2008 and March 7, 2010, after the 2008 Expedition was added to the policy. *See id.* at ¶ 43.

Mr. Willsch acknowledged that he received and reviewed the Declarations pages sent by NICOA. *See id.* at ¶ 44. When the policy was renewed the Notice of Availability forms outlined above accompanied the renewal documents. *See id.* at ¶ 45.

## VI. LEGAL ARGUMENT

### A. As Willsch Was Admittedly Aware That His Vehicles Contained Anti-Theft Devices, Willsch's Cause of Action for Breach of Contract — Reformation is Without Merit.

Willsch's claim for "breach of contract — reformation" is based upon the contention that the subject insurance policies issued to Willsch and the putative class members should be reformed due to the "mutual mistake" of the contracting parties, who "had the express intention and understanding that the contracts would conform with and follow state law," or alternatively, the "unilateral mistake" of Willsch and the putative class members "as to what the law required" with regard to the anti-theft discount, and the insurers' alleged "knowledge of and failure to correct the mistake." *See Willsch v. Nationwide Ins. Co. of America* Class Action Complaint, at ¶¶ 46, 49, 50. However, as set forth above, Willsch has acknowledged that at the time of his application for insurance with NICOA, he was aware that the vehicles at issue in this litigation had anti-theft devices, and that Mr. Willsch had been provided with the Notice of Availability of discounts at time of application and upon issuance of the policy and at renewal. In light of these undisputed facts, Willsch's claims are precluded as a matter of law.

Pennsylvania courts have recognized that "a party is generally not entitled to equitable relief based on ignorance or mistake of law where the party had full knowledge of all the material facts in entering into a contract." *Wilson Area School Dist. v. Skepton*, 860 A.2d 625, 631 (Pa. Cmwlth. Ct. 2004), *aff'd*, 586 Pa. 513, 895 A.2d 1250 (2006). A "mistake of law" has been defined as a "mistake as to the legal consequences of an assumed state of facts." *Wilson*, 586 Pa. at 522, 895 A.2d at 1295 (citations and internal quotation marks omitted). In other words, a mistake of law "occurs when a party is truly acquainted with the existence or non-existence of facts, but is ignorant of, or comes to an erroneous conclusion as to, their legal effect." *Acme Markets, Inc. v. Valley View Shopping Center, Inc.*, 342 Pa. Super. 567, 568, 493

9

A.2d 736, 737 (1985). Therefore, any mistake that Willsch may have had "as to what the law required" with regard to the anti-theft discount cannot serve as a basis for reformation. Willsch knew at the time of application that the insured vehicles contained anti-theft devices and Willsch's receipt of multiple Notice of Availability forms from NICOA provided notice of the availability of the passive anti-theft device discount. Accordingly, summary judgment must be granted in NICOA's favor.

## VII. CONCLUSION

For the reasons set forth above and in Defendants' Joint Memorandum of Law in Support of Its Motion for Summary Judgment, Defendant Nationwide Insurance Company of America respectfully requests that this Honorable Court grant its Motion and enter judgment in its favor.

**NELSON LEVINE de LUCA & HORST, LLC**

**BY:** /s/ Michael R. Nelson
Michael R. Nelson (I.D. 65679)
G. Franklin McKnight (I.D. 85701)
518 Township Line Rd., Suite 300
Blue Bell, PA 19422
Phone: 215.358.5100
Fax: 215.358.5101
mnelson@nldhlaw.com
fmcknight@nldhlaw.com
Attorney for Defendant
Nationwide Insurance Company of America

Dated: June 30, 2010