# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY WILLISCH, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | NO.:  09-5276 |
| | : | |
| NATIONWIDE INSURANCE COMPANY | : | |
| OF AMERICA | : | |

| | | |
|---|---|---|
| DEBORAH KOLESAR, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | NO.:  09-5510 |
| | : | |
| ENCOMPASS INDEMNITY COMPANY | : | |

| | | |
|---|---|---|
| NICOLE MECADON | : | CIVIL ACTION |
| | : | |
| v. | : | NO.:  09-5511 |
| | : | |
| ALLSTATE INDEMNITY COMPANY | : | |

| | | |
|---|---|---|
| RONALD BUCARI, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | NO.:  09-5512 |
| | : | |
| ALLSTATE PROPERTY AND CASUALTY | : | |
| INSURANCE COMPANY | : | |

| | | |
|---|---|---|
| ROBERT BESECKER, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | NO.:  09-5513 |
| | : | |
| PEERLESS INDEMNITY INSURANCE | : | |
| COMPANY | : | |

| | | |
|---|---|---|
| ALBERT BALDONI | : | CIVIL ACTION |
| | : | |
| v. | : | NO.: 09-5514 |
| | : | |
| STATE FARM MUTUAL AUTOMOBILE | : | |
| INSURANCE COMPANY | : | |

---

| | | |
|---|---|---|
| PAMELA LOWE-FENICK, | : | |
| JAMES BOYLE SR., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | NO.: 09-5515 |
| | : | |
| PROGRESSIVE SPECIALTY | : | |
| INSURANCE COMPANY | : | |

---

| | | |
|---|---|---|
| ANN WARRICK, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | NO.: 09-6077 |
| | : | |
| ALLSTATE INSURANCE COMPANY | : | |

**DEFENDANTS' JOINT MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.    Introduction .................................................................................................... 1

II.   Argument ....................................................................................................... 4

      A.   Plaintiffs Are Not Entitled to Summary Judgment on Count I ...................................4

           1.   The Plain Language of the MVFRL Does Not Require Insurers to Determine,
                Without Input from the Insured, Whether an Insured's Car Has a Qualifying
                Antitheft Device.........................................................................................4

                a.   Plaintiffs' Position Does Not Follow from the Statutory Language.................5

                b.   The Pennsylvania Insurance Department Has Not Supported Plaintiffs'
                     Position ...............................................................................................10

           2.   Plaintiffs Have Not Shown Insurers Could Have Accurately Determined For
                Themselves in 1990 – or Even Today – that a Particular Car Qualifies for a
                Passive Antitheft Device Discount .......................................................12

                a.   The Legislature's Intent Must Be Determined As of the Time the
                     Relevant Provisions Were Passed.......................................................14

                b.   Plaintiffs Cannot Establish That the Information Available Today Is
                     Accurate or Consistent From Source to Source.................................16

           3.   Whether Plaintiffs' Cars Have a Qualifying Passive Antitheft Device Remains
                In Dispute................................................................................................21

      B.   Plaintiffs Are Not Entitled to Summary Judgment on their Contract Claims.............24

      C.   Plaintiffs' Motions Should Be Denied Because They Failed to Comply with the
           Court's Scheduling Order .........................................................................................28

III.  Conclusion .................................................................................................... 31

# <u>TABLE OF AUTHORITIES</u>

## Published Opinions

*ACE Am. Ins. Co. v. Underwriters at Lloyds & Cos.*, 939 A.2d 935 (Pa. Super. Ct. 2007) ......... 27

*Bahlkow v. Preston*, 244 N.W. 93 (S.D. 1932) ................................................................. 16

*Bartron v. Northampton County*, 19 A.2d 263 (Pa. 1941) ................................................. 7

*Benjamin v. Allstate Ins. Co.*, 511 A.2d 866 (Pa. Super. Ct. 1986) ................................... 27

*Blood v. Old Guard Ins. Co.*, 934 A.2d 1218 (Pa. 2007) ................................................... 7

*Brakeman v. Potomac Insurance Co.*, 371 A.2d 193 (Pa. 1977) ........................................ 27

*Brown v. Mayor, Alderman and City of New York*, 63 N.Y. 239 (N.Y. 1875) ..................... 16

*Burstein v. Prudential Prop. Casualty Ins. Co.*, 809 A.2d 204 (Pa. 2002) .......................... 8

*Escher v. Decision One Mortg. Co.*, 417 B.R. 245 (E.D. Pa. 2009) ............................... 9, 10

*HSP Gaming, L.P. v. City of Phila.*, 954 A.2d 1156 (Pa. 2008) ....................................... 14

*Kilmore v. Erie Ins. Co.*, 595 A.2d 623 (Pa. Super. 1991) .......................................... 8, 26

*Pan Amer. Pet. Corp. v. El Paso Nat. Gas Co.*, 477 P.2d 827 (N.M. 1970) ...................... 16

*People v. Bonnetta*, 205 P.3d 279 (Cal. 2009) ................................................................ 16

*Sayles v. Thompson*, 457 N.E.2d 440  (Ill. 1983) ........................................................... 16

*State Bd. of Nursing v. Ruebke*, 913 P.2d 142 (Kan. 1996) ............................................. 16

*Toth v. Donegal Cos.*, 964 A.2d 413 (Pa. Super. Ct. 2009) ............................................. 20

*Werner v. Hillman Coal & Coke Co.*, 150 A. 471 (Pa. 1930) .......................................... 15

## Unpublished Opinions

*Alleman v. State Farm Life Ins. Co.*, No. 07-4283, 2009 WL 1833604 (3d Cir. 2009) ......... 25, 26

*Aronson v. Public Employees Ret. Bd.*, -- P.3d --, 2010 WL 2508909 (Or. App. June 23, 2010) ................................................................................................................ 16

*Stern Family Real Estate P'ship v. Pharmacists Mut. Ins. Co.*, No. CIV A 06-130, 2007 WL 951603 (W.D. Pa. Mar. 27, 2007) ................................................................... 8

## Statutes

75 Pa. Cons. Stat. § 1791.1 ............................................................................... 2, 4, 5, 6

75 Pa. Cons. Stat. § 1799.1 ................................................................................ passim

**DEFENDANTS' JOINT MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT**

**I.      *Introduction***

To prevail on their Motions for Summary Judgment filed in the eight related actions

pending before this Court, Plaintiffs must establish two things.  First, Plaintiffs must convince

this Court that section 1799.1 of Pennsylvania's Motor Vehicle Financial Responsibility Law

("MVFRL") was intended by the Legislature in 1990 to effectively be a strict liability provision

– *i.e.* that it requires an insurer to attempt to determine for itself, with no input from an applicant,

whether the applicant's car has a qualifying passive antitheft device and, if so, to apply the

statutory discount.  Second, Plaintiffs also must establish that there is no genuine dispute as to

whether their respective automobiles in fact have a qualifying passive antitheft device, as defined

by section 1799.1(b).  Plaintiffs cannot establish either, let alone both, of these criteria.  Their

motions for summary judgment should be denied.[1]

With regard to the first point, as discussed in detail in Defendants' Joint Brief in support

of their summary judgment motion, Plaintiffs' proffered statutory construction is precluded by

the plain language of the statute, which requires insurers to "provide" an antitheft device

discount to their policyholders by (1) including such a discount in their rate filings and (2)

informing applicants and policyholders of the discount's availability for drivers who meet the

statutory requirements.  Plaintiffs' interpretation is also refuted by the legislative history of the

---

[1] Although the eight cases before the Court have not formally been consolidated and although
Plaintiffs filed separate summary judgment briefs against each insurance carrier, in an attempt to
avoid unnecessary duplication, the Defendants are submitting this Joint Memorandum in
Opposition to Plaintiffs' Motions for Summary Judgment.  Defendants also incorporate their
own Joint Motion for Summary Judgment, the supporting Memorandum (hereinafter referred to
as "Joint Brief"), and the exhibits and Statements of Undisputed Fact filed in support of
Defendants' Joint Motion.

MVFRL, the Pennsylvania Insurance Department's interpretation of the discount provisions, and other extrinsic evidence.  Defendants will not repeat in detail each of the arguments set forth in Defendants' joint motion for summary judgment, but instead will focus this memorandum on the specific points Plaintiffs have raised in support of their motions.

In summary, to the extent Plaintiffs' argument purportedly is based on the "plain language" of the statute, Plaintiffs focus almost exclusively on four isolated words in section 1799.1(a) – "shall provide premium discounts."  Under recognized statutory interpretation principles, the Court should also consider the remaining language of section 1799.1(a), all of section 1799.1(b), and the interrelated notice provision of section 1791.1(c), and should do so against the backdrop of common law principles establishing that insurers are entitled to ask insureds for material information and to rely on their answers.  Viewed in light of what the statute actually says and the principles of law that apply, Plaintiffs' argument fails.

Even if Plaintiffs' statutory construction argument had some merit, which it does not, it is necessarily premised on the underlying assumption that insurers actually *could* readily and accurately determine for themselves that a car has a qualifying device.  The undisputed record evidence establishes otherwise.  Contrary to Plaintiffs' initial assertion, insurers cannot obtain the requisite information from the Internet "in a matter of seconds."[2]  Likewise, Plaintiffs were wrong when they suggested to the Court at the initial scheduling conference that a vehicle's VIN would inform an insurer whether a vehicle has an antitheft device – it does not.

_____

[2]  *See* Am. Compl., *Lowe-Fenick v. Progressive Specialty Ins. Co.*, ¶ 14; Compl., *Baldoni v. State Farm Mutual Automobile Ins. Co.*, ¶ 13; Compl., *Besecker v. Peerless Indemnity Ins. Co.*, ¶ 13;  Compl., *Willsch v. Nationwide Ins. Co. of America*, ¶ 13; Compl., *Bucari et al. v. Allstate Property & Casualty Ins. Co.,* ¶ 13; Compl., *Kolesar v. Encompass Indemnity Co.*, ¶ 13; Compl., *Mecadon v. Allstate Indemnity Co.*, ¶ 13 Compl., *Warrick v. Allstate Insurance Co.*, ¶ 13.

2

Apparently recognizing that their initial assertions do not withstand scrutiny, Plaintiffs have changed course and now argue that insurers are obliged to grant the discount based on information available from specific third party sources.  Once again, the facts in the record prove otherwise.  Specifically, Plaintiffs have not established what information was available from those or other sources in 1990, when the antitheft device discount provisions were passed, and it is undisputed that even today no one source provides totally accurate or complete information.  Plaintiffs have submitted a virtual mountain of purportedly "available" information in connection with their summary judgment motions.  As discussed in greater detail below, a review of such information only serves to highlight Defendants' point – the information is incomplete and often inaccurate.  Which of the different sources would Plaintiffs have the Court compel insurers to use:  HLDI, ISO, Polk, manufacturers, owner's manuals?  Clearly the Legislature has not provided any guidance in this regard and Defendants respectfully suggest that it is outside the purview of this Court's authority to simply pick one.  And, insurers cannot rely on some combination of information from various sources because the information is not consistent across those sources.  In short, the mandate Plaintiffs seek to impose on insurers is unworkable at best, even with the information available today.

Even assuming, *arguendo*, that the Court agreed with Plaintiffs' statutory construction argument, Plaintiffs' motions for summary judgment should be denied because they cannot establish, through undisputed evidence, that their particular cars in fact had qualifying devices.  As discussed below, a device qualifies for the statutory discount only if it "is activated automatically when the operator turns the ignition key to the off position."  75 Pa. Cons. Stat. § 1799.1(b).  Plaintiffs have failed to introduce *any* evidence that their devices are activated in

3

that manner, and Defendants have introduced evidence that they are not.  For this reason alone, Plaintiffs' motions for summary judgment should be denied.

Succinctly stated, Plaintiffs cannot establish that they are entitled to judgment as a matter of law, and thus their motions must be denied, both as to Count I for an alleged violation of the MVFRL and Count II for breach of contract.[3]

## II.     Argument

### A.      Plaintiffs Are Not Entitled to Summary Judgment on Count I

The object of statutory interpretation is to give effect to the legislature's intent at the time the statute was adopted.  Statutory interpretation must start with the words of the statute, read as a whole and in context.  Where, as here, the statute imposes clear obligations, Pennsylvania courts may not construe the statute as including a requirement or burden that is not set forth in the statutory language.  While courts may look to legislative history to confirm that a statute means what it says, extrinsic evidence cannot be used to contradict or add to the plain meaning of the statute.  Joint Brief at 7-11 (citing Pennsylvania's Statutory Construction Act and case law, including cases applying these principles to MVFRL provisions).

#### 1.      The Plain Language of the MVFRL Does Not Require Insurers to Determine, Without Input from the Insured, Whether an Insured's Car Has a Qualifying Antitheft Device

Plaintiffs assert repeatedly in their motions for summary judgment that the antitheft device discount is "mandated," not "optional."[4]  Defendants do not contend otherwise.  Rather,

---

[3]  As discussed in Defendants' Joint Brief, the complaints in these cases included claims that Defendants failed to provide the notice required by section 1791.1(c), as well as a second breach of contract count, Count III, for "Reformation."  Plaintiffs have not moved for summary judgment on Count III, and they do not – and cannot – contend in their summary judgment motions that Defendants failed to give notice.  Accordingly, Defendants have not addressed those claims.

4

the dispute in this case centers around whether, as Plaintiffs contend, the Pennsylvania Legislature intended in 1990 to require that insurers determine for themselves, with no input from an applicant, whether the applicant's car has a qualifying antitheft device and, if so, to apply the statutory discount automatically.  Plaintiffs' position does *not* follow from the statutory language and in fact is refuted by the plain language of the operative statutory provisions. Plaintiffs' position is further refuted by the legislative history of the MVFRL, the Pennsylvania Insurance Department's interpretation of the discount provision, and other extrinsic evidence.

> ### a.   *Plaintiffs' Position Does Not Follow from the Statutory Language*

Plaintiffs contend the phrase "shall provide premium discounts" unambiguously requires insurers to determine for themselves whether each vehicle they insure contains a qualifying antitheft device and to apply the discount automatically to all qualifying vehicles.  In support of this contention, Plaintiffs argue that, because section 1791.1 requires insurers to "provide" notices of the discount's availability, the word "provide" in section 1799.1 must somehow mean "give" instead of "make available."  There is simply no basis, however, to conclude that "provide" must mean "give" merely because section 1791.1 requires insurers to "provide" notices at certain times.  In fact, section 1791.1 actually suggests the General Assembly intended the word "provide," as used in section 1799.1, to mean "make available."  Though section 1791.1 does not prescribe the exact contents of the requisite notices, it does require the notices to inform policyholders that "*discounts are available* for drivers who meet the requirements of

---

[4] *See* Pls.' Mem. in Supp. of Mot. for Summ. J., *Lowe-Fenick*, at 4, 6, 10; Pls.' Mem. in Supp. of Mot. for Summ. J., *Baldoni*, at 4, 9, 11; Pls.' Mem. in Supp. of Mot. for Summ. J., *Willsch*, at 4, 6, 10; Pls.' Mem. in Supp. of Mot. for Summ. J., Allstate/Encompass Defendants, at 4, 7, 12; Pls.' Mem. in Supp. of Mot. for Summ. J., *Besecker*, at 4, 6, 11.

5

section[] . . . 1799.1 (relating to antitheft devices)."  75 Pa. Cons. Stat. § 1791.1(c) (emphasis

added).  The statute does not say the notice must inform policyholders that "discounts are

automatically provided" without input from insureds; instead, the notice is required to state only

that "discounts are *available* for drivers who meet the requirements."  *Id*. (emphasis added).  The

General Assembly should be presumed to have said what it meant and meant what it said.

        In any event, Plaintiffs' comparison between sections 1791.1 and 1799.1 is a red herring.

This case does not turn on the meaning of "shall provide," read in isolation, and it certainly does

not turn on which dictionary definition of "provide" the Court might turn to for guidance.

Plaintiffs cite a number of definitions of the word – including a definition from Black's Law

Dictionary which does not even include the word "give."[5]  Regardless of whether "provide"

means "give" or "supply" or "make available," however, the issue in this case is *how* insurers are

required to "give," "supply," or "make available" the antitheft device discount.  The answer is

provided by the remaining language of the MVFRL, which plainly does *not* require insurers to

undertake an investigation and determine for themselves whether particular vehicles have

passive antitheft devices.

        As set forth in the Defendants' Joint Brief in support of their various motions for

summary judgment, the MVFRL requires insurers to "provide" an antitheft device discount by

(1) including it in their approved rate filings and (2) providing notices that the discount is

"available" for drivers who meet the statutory requirements.  That is precisely what the statutory

_____

[5] *See* Pls.' Mem. in Supp. of Mot. for Summ. J., *Lowe-Fenick*, at 8 n.6 (noting that Black's
defines "provide" as "supply, afford, contribute, make, procure, or furnish for future use," while
other sources define it as "make available.").  *Accord* Pls.' Mem. in Supp. of Mot. for Summ. J.,
*Baldoni*, at  14 n.10; Pls.' Mem. in Supp. of Mot. for Summ. J., *Willsch*, at 8 n.7; Pls.' Mem. in
Supp. of Mot. for Summ. J., Allstate/Encompass Defendants, at 10 n.7; Pls.' Mem. in Supp. of
Mot. for Summ. J., *Besecker*, at 9 n.6.

provisions say.  Pennsylvania courts have long recognized that the inclusion of specific obligations in a statute implies the exclusion of all other obligations, *see, e.g.*, *Bartron v. Northampton County*, 19 A.2d 263, 265 (Pa. 1941), and have consistently adhered to the related principle that courts are "without authority to write new requirements into [a statute] where the statutory language is without ambiguity," *Blood v. Old Guard Ins. Co.*, 934 A.2d 1218, 1227 (Pa. 2007).  The General Assembly *could* have expressly required insurers to determine for themselves whether particular vehicles contain qualifying devices, but it did not do so.  Plaintiffs cannot overrule this choice simply by isolating four words – "shall provide premium discounts" – and ignoring the rest of the statute.[6]

Plaintiffs also contend that Defendants read the statute to mean they never have to give a discount unless "the consumer fortuitously says whatever magic words Defendant claims are necessary to ask for the mandated discount."[7]  This mischaracterizes how Defendants implement the antitheft discount requirement.  As discussed in Defendants' Joint Brief, each Defendant complied with the statutory mandate by including an antitheft device discount in its approved rate filings and by providing the requisite notices.  And although the statute does not require more of insurers, each Defendant has adopted a practice that includes asking applicants if their cars are equipped with passive antitheft devices and applying the discount if they answer

---

[6] Indeed, while Plaintiffs insist that the Court adhere to their strained "plain meaning" interpretation of section 1799.1(a), they ask the Court to ignore entirely the definition of "passive antitheft device" set forth in section 1799.1(b).  *See supra* Section II(A)(3).

[7] *See* Pls.' Mem. in Supp. of Mot. for Summ. J., *Lowe-Fenick*, at 7-8; Pls.' Mem. in Supp. of Mot. for Summ. J., *Baldoni*, at 13; Pls.' Mem. in Supp. of Mot. for Summ. J., *Willsch*, at 8; Pls.' Mem. in Supp. of Mot. for Summ. J., Allstate/Encompass Defendants, at 9; Pls.' Mem. in Supp. of Mot. for Summ. J., *Besecker*, at 8.

affirmatively.  Joint Brief at 4-8 (supplying record cites).  The only "magic word" a policyholder needs to utter to receive the discount is "yes."

Plaintiffs also take issue with Defendants' implementation of the antitheft discount provisions by suggesting that insurers apply the discount inconsistently, since some insureds may not know if their cars have antitheft devices, so that one person with a particular car may end up receiving the discount while another person with the same car may not.  This contention is not only irrelevant, but misleading.  As just noted, the undisputed evidence establishes that Defendants' uniform practice is to notify insureds of the discount and ask them if their cars have a passive antitheft device.  An insured who states that he or she has a passive antitheft device receives the discount.  Any inconsistency that arguably may exist necessarily is a result of variations in information provided by insureds, not inconsistent treatment by insurers.

Under established principles of Pennsylvania law, there is nothing wrong with this type of approach.  Specifically, Plaintiffs do not dispute, nor can they, that insurers are entitled to ask insureds for material information, that insureds are responsible to give correct answers, and that insurers have "'every right to rely'" on those answers.  Joint Brief at 12-13 (quoting case law).  Likewise, insureds have both the right and the obligation to determine for themselves what they are buying.  *See, e.g.*, *Burstein v. Prudential Prop. Casualty Ins. Co.*, 809 A.2d 204, 208 (Pa. 2002) (upholding a clear exclusion in an automobile policy; plaintiff "should have taken affirmative steps" to determine what coverage was provided); *Kilmore v. Erie Ins. Co.,* 595 A.2d 623, 626-27 (Pa. Super. 1991); *Stern Family Real Estate P'ship v. Pharmacists Mut. Ins. Co.*, No. CIV A 06-130, 2007 WL 951603, *3 (W.D. Pa. Mar. 27, 2007) (insurance customer "is presumed to know what it needs or wants").

Plaintiffs' argument that Defendants are trying to add to the MVFRL the requirement that the insured "ask for the discount" is equally misguided.  The relevant MVFRL sections impose mandatory legal obligations on insurers, and do not expressly address what actions insureds are expected to take as a result.  In determining legislative intent, the Court's focus should thus be to determine the obligations the Legislature intended to impose on insurers.  As set forth in cases Plaintiffs cite in a footnote, with which Defendants agree, Pennsylvania law precludes courts from adding conditions not set forth in the clear statutory language.[8]  Neither that principle nor the cited cases, however, supports the position Plaintiffs assert here.

Though Plaintiffs cite this Court's decision in *Escher v. Decision One Mortg. Co.*, 417 B.R. 245 (E.D. Pa. 2009), the case actually refutes their position.  In *Escher*, this Court addressed the question of which party to a mortgage transaction – borrower or lender –  had the burden of determining whether the borrower had preexisting title insurance and therefore qualified for a refinance rate.  The Court's analysis rested on the language of the governing rate manual, which expressly placed the burden on borrowers to produce evidence of their entitlement to a reissue rate while not including any such requirement in the section addressing refinance rates.  Citing Third Circuit precedent, the Court held that the requirement in one section could not be imported into another section which was silent on the subject.  *Id.* at 253-58.  The Court further supported its holding with an assessment of the realities of a mortgage transaction, stating that both lenders and insurers know that lenders do not provide mortgages without title insurance.  In contrast, the rate manual provisions in effect at the time did not include a notice requirement, so a borrower

---

[8]  *See* Pls.' Mem. in Supp. of Mot. for Summ. J., *Lowe-Fenick*, at 11 n.7; Pls.' Mem. in Supp. of Mot. for Summ. J., *Baldoni*, at  17 n.11; Pls.' Mem. in Supp. of Mot. for Summ. J., *Willsch*, at 19 n.10; Pls.' Mem. in Supp. of Mot. for Summ. J., Allstate/Encompass Defendants, at 21 n.10; Pls.' Mem. in Supp. of Mot. for Summ. J., *Besecker*, at 20 n.9.

would likely not know of the reduced rate and would have no reason to produce the earlier policy. *Id.* at 258.

Consistent with the Court's reasoning in *Escher*, because the antitheft discount provisions at issue in this case state what insurers must do to provide the discount, additional requirements may not be imposed on insurers. Plaintiffs received the statutory notice of the antitheft discount's availability, and thus of the need to determine whether their cars had a qualifying passive antitheft device. Defendants were entitled to rely on the information Plaintiffs gave them.

> **b.      The Pennsylvania Insurance Department Has Not Supported Plaintiffs' Position**

In addition to their purported "plain language" arguments, Plaintiffs also contend that a few statements from the Pennsylvania Insurance Department support their position. This contention fails, since none of the Department's public statements on which Plaintiffs rely endorses their strained interpretation of the MVFRL's antitheft device discount provisions. Those statements either do not address *how* insurers must provide the statutory discount or directly contradict Plaintiffs' theory.

Plaintiffs cite two documents in which the Insurance Department purportedly "recognized that the ATD discount provisions are mandatory."[9] But neither document sheds any light on the actions the Department expected insurers to take in order to meet their obligation to provide the discount. In particular, neither document states or implies that insurers are obligated to

---

[9] *See* Pls.' Mem. in Supp. of Mot. for Summ. J., *Lowe-Fenick*, at 11; Pls.' Mem. in Supp. of Mot. for Summ. J., *Baldoni*, at 17-19; Pls.' Mem. in Supp. of Mot. for Summ. J., *Willsch*, at 11; Pls.' Mem. in Supp. of Mot. for Summ. J., Allstate/Encompass Defendants, at 13-14; Pls.' Mem. in Supp. of Mot. for Summ. J., *Besecker*, at 11.

determine for themselves whether an insured's car is equipped with a qualifying passive antitheft device. In one of the documents Plaintiffs cite, a notice to insurers dated December 7, 1992, the Department's statement that the comprehensive premium "must be discounted at least 10% for a vehicle equipped with passive antitheft devices" was made in the context of an observation that "some insurers are not discounting the flat expense fee." This document does not address, much less support, Plaintiffs' argument that insurers are obligated to determine if a particular model car has a qualifying device without input from the insured.[10]

In the second document Plaintiffs reference – a 2005 market conduct report involving Esurance Insurance Company – the Department merely stated that the insurer had "failed to apply" the discount for certain policies, with no explanation of the basis for the Department's finding.[11] Importantly, the Department did *not* direct Esurance to apply the discount without input from the insured, and there is no evidence Esurance took such actions as a result of this report. To the contrary, Esurance's web site currently directs the customer applying for insurance to take the following steps:

> Please select the discounts that apply to this vehicle.
>
> Passive alarm: Your car is equipped with either a passive alarm, or a steering restraint/non-passive alarm.

---

[10] Defs.' Jt. Stmt. of Disputed Facts in Opposition to Plaintiffs' Stmt. of Uncontested Material Facts, ¶ 214.

[11] Defs.' Jt. Stmt. of Disputed Facts, ¶ 213. The cited violations were for 26 out of 3,055 policies in the category "new business without surcharges"; 18 out of 1,264 "new business with surcharges"; 28 out of 1,433 "renewals with surcharges"; and 13 out of 433 "renewals with surcharges. *Id.* The "company response" included in the report stated that the company had identified and correct a rating error approximately 12 months before the examination, and had given the Department a list of the affected policies. *Id.*

Anti-theft: Your car is equipped with an approved electronic recovery system (Lojack, Teletrac, OnStar).[12]

In contrast, when the Department has spoken to the issue of how the antitheft device discount should be applied in particular transactions, it has placed the responsibility squarely on the insured to determine whether his or her car has an antitheft device, to inquire about discounts, and to ensure that the information in his or her application is correct.  *See* Joint Brief at 28-29 (quoting Insurance Department's published Automobile Insurance Guide).

> **2.    Plaintiffs Have Not Shown Insurers Could Have Accurately Determined For Themselves in 1990 – or Even Today – that a Particular Car Qualifies for a Passive Antitheft Device Discount**

Plaintiffs' construction of the MVFRL's antitheft device discount provisions is necessarily premised on the underlying assumption that insurers can determine for themselves whether a car has a qualifying device (and could have done so in 1990 when the statute was enacted).  As the undisputed record demonstrates, that premise is false.

When Plaintiffs filed these lawsuits, they alleged that the requisite information regarding the existence of antitheft devices could be found on the Internet "in a matter of seconds."  *See* above at 4 n.2 (citing complaints).  Plaintiffs repeated this claim during discovery as recently as May 28th, contending in interrogatory responses that Defendants can readily ascertain such information "by a simple Internet search using Google or another search engine."[13]

---

[12]  Defs.' Jt. Stmt. of Disputed Facts, ¶ 213.

[13]  *See, e.g.,* Pls. Resp. to Nationwide Insurance Company of America's 1st Set of Ints., No. 3; Pls. Resp. to Progressive's 2d Set of Ints., No. 1 (Ex. F to Defs.' Jt. Stmt. of Undisputed Facts). Notwithstanding this claim, Plaintiffs refused to specify what particular Internet sources supplied this information (*id.*), and objected that questions about the accuracy and completeness of available information were "unduly burdensome, overly broad, nonsensical, and intended to annoy and harass Plaintiffs" (*id.,* No. 3) even though those questions were based directly on allegations in the complaints.  *See also* Pls. Resp. to Peerless' 2d Set of Ints., No. 1 (Q. "Please

12

Plaintiffs apparently have abandoned their "Internet" argument, as they do not mention it in their memorandum and allude only in passing to one Internet source in their Statement of Undisputed Material Facts.  *See* Pls.' Stmt. of Uncontested Material Facts, ¶ 175 (mentioning autos.yahoo.com).  Equally important, notwithstanding their prior assertions to this Court, Plaintiffs now acknowledge that information regarding the existence of an antitheft device cannot be identified simply by reviewing a vehicle's VIN.  *Id.*  ¶ 210.

Plaintiffs' new approach, presented in support of their summary judgment motion, is anything but simple.  Plaintiffs have filed with the Court an enormous amount of paper in an effort to demonstrate that "a wealth of information" within Defendants' "easy reach" "clearly put [Defendants] on notice of which cars qualified for an ATD discount."[14]  These documents, however, merely confirm what Defendants demonstrated in their summary judgment motions: reliable sources of information about antitheft devices were not available in 1990 (the relevant timeframe for determining legislative intent) and are not available even today.

Further complicating matters, Plaintiffs apparently take the position that the automobile industry's definition of "passive antitheft device," and not Pennsylvania's statutory definition,

---

identify and detail the steps necessary to perform the "simple Internet search[es] you refer to in your objections…"; A. "Plaintiffs object to this interrogatory as not seeking information that is relevant or reasonably calculated to lead to the discovery of admissible evidence . . . . Plaintiffs are not concerned with Peerless obtaining from the Internet the information necessary to comply with the statutory mandate . . . Plaintiffs merely refer Peerless to the Internet as one of many sources available. . . .").

[14] *See* Pls.' Mem. in Supp. of Mot. for Summ. J., *Lowe-Fenick*, at 28-29; Pls.' Mem. in Supp. of Mot. for Summ. J., *Baldoni*, at  23; Pls.' Mem. in Supp. of Mot. for Summ. J., *Willsch*, at 27; Pls.' Mem. in Supp. of Mot. for Summ. J., Allstate/Encompass Defendants, at 35-36; Pls.' Mem. in Supp. of Mot. for Summ. J., *Besecker*, at 27.

should control the outcome of this case.[15]  Under Plaintiffs' theory, insurers apparently must collect all available information for each vehicle and apply the discount if any source labels the vehicle as having a "passive" device, regardless of how that source defines the term and even when its information is demonstrably incorrect, inconsistent with other sources, or inconsistent with the operative definition set forth under Pennsylvania law.  Nothing in the statutory language or the legislative history supports this result, and it cannot be what the Legislature intended.

a.       **The Legislature's Intent Must Be Determined As of the Time the Relevant Provisions Were Passed**

Plaintiffs' motions for summary judgment, like their complaints, focus on information allegedly available to insurers *in 2010*.  *See, e.g.*, Pls.' Mem. in Supp. of Mot. for Summ. J., *Lowe-Fenick*, at 16 (information concerning standard passive antitheft devices in cars "*is* available to Defendant from a wide variety of sources") (emphasis added);[16] Pls.' Complaints (cited above at 4 n.2) (it "*takes* a matter of seconds to determine on the internet" what standard antitheft equipment a model has) (emphasis added).   But this is plainly not the relevant time frame.  In determining legislative intent, the focus must be what the Legislature understood and intended in 1990 when the antitheft device discount provisions were passed.  *HSP Gaming, L.P. v. City of Phila.*, 954 A.2d 1156, 1182 (Pa. 2008) ("The intent of the legislature must be determined as of the time the original act was passed."); *Werner v. Hillman Coal & Coke Co.*,

---

[15] *See* Pls.' Mem. in Supp. of Mot. for Summ. J., *Lowe-Fenick*, at 16-19; Pls.' Mem. in Supp. of Mot. for Summ. J., *Baldoni*, at  19-22; Pls.' Mem. in Supp. of Mot. for Summ. J., *Willsch*, at 16-19; Pls.' Mem. in Supp. of Mot. for Summ. J., Allstate/Encompass Defendants, at 17-20; Pls.' Mem. in Supp. of Mot. for Summ. J., *Besecker*, at 16-19.

[16] *Accord* Pls.' Mem. in Supp. of Mot. for Summ. J., *Baldoni*, at 23; Pls.' Mem. in Supp. of Mot. for Summ. J., *Willsch*, at 15; Pls.' Mem. in Supp. of Mot. for Summ. J., Allstate/Encompass Defendants, at 17-20; Pls.' Mem. in Supp. of Mot. for Summ. J., *Besecker*, at 16.

150 A. 471, 473 (Pa. 1930) ("all laws must be executed according to the sense and meaning which they imported at the time of their passage").

Plaintiffs apparently did try to determine through discovery what information was available in the past, as their discovery requests to numerous third parties were not limited in time frame.  Defs.' Jt. Stmt. of Undisputed Facts, ¶¶ 104-05.  Because Plaintiffs' own discovery efforts revealed that it was virtually, if not completely, impossible to obtain antitheft device information in 1990, Plaintiffs' memorandum does not address the availability of antitheft device information in 1990, and their "Statement of Uncontested Material Facts" focuses almost entirely on information allegedly available on cars manufactured between 2003 and today.

As the Pennsylvania Supreme Court's decision in *Werner* demonstrates, this defect in Plaintiffs' approach is fatal.  The *Werner* Court held that a statutory provision authorizing a prothonotary to charge copy fees of two cents per ten words did not allow him to recover "the same amount for each of the carbon manifolds produced at the same time."  *Werner*, 150 A. at 473.  As the Court explained, a statute must be "[v]iewed according to the state of the art at the time of the passage of the statute," and the typewriter, "with its capacity for producing carbon manifolds, did not exist" when the relevant statute was passed.  *Id.*  The statute thus could not be construed to allow the prothonotary to collect extra fees just because new technology allowed him to make multiple copies.  *Id.*

Under precisely the same analysis, the alleged availability of information in 2010 regarding what model cars come standard with antitheft devices sheds no light on the intention of the Legislature in 1990, when the Internet was not in widespread commercial use.  As Defendants demonstrated in their motions for summary judgment, the third-party sources that currently maintain and provide information on antitheft devices did not maintain or provide such

15

information in 1990.  Joint Brief at 23-28.  Plaintiffs have not shown otherwise.  Even if accurate

and consistent information were available today – which it is not – that would not support adding

to the MVFRL a requirement the Legislature could not have contemplated or intended in 1990.[17]

> **b.** **Plaintiffs Cannot Establish That the Information Available Today Is Accurate or Consistent From Source to Source**

Even if Plaintiffs could establish that information available today is somehow

tangentially relevant to this Court's consideration of a 1990 statute, Plaintiffs have not

established that information sources available even today provide accurate or consistent data

about which vehicles contain  any type of antitheft device, much less devices that fall within the

MVFRL's specific definition of "passive."  To the contrary, the documents Plaintiffs filed in

---

[17] Pennsylvania case law discussed in the text is consistent with cases nationwide spanning at least the last 135 years.  *See, e.g.*, *Aronson v. Public Employees Ret. Bd.*, -- P.3d --, 2010 WL 2508909, *3 (Or. App. June 23, 2010) ("Our goal, in construing the text of [the statute at issue], is to discern what the legislature intended at the time that it originally enacted the critical statutory language in 1953"); *People v. Bonnetta*, 205 P.3d 279, 285 (Cal. 2009) ("The task of the courts is to determine what the Legislature intended at the time it enacted the statute, not to speculate on what the Legislature might have done had it enacted the statute at a later time when other factors were present"); *State Bd. of Nursing v. Ruebke*, 913 P.2d 142, 157 (Kan. 1996) ("Where the ordinary meaning of words may have changed since the enactment of a statute, they must be understood in the sense they were intended at the time the statute was passed"); *Sayles v. Thompson*, 457 N.E.2d 440, 442  (Ill. 1983) ("The meaning of a statute or constitutional provision depends on the intent of the drafters at the time of its adoption, and it is a long-standing principle of statutory construction that it is the court's duty to ascertain and effectuate that intent"); *Pan Amer. Pet. Corp. v. El Paso Nat. Gas Co.*, 477 P.2d 827, 830 (N.M. 1970) ("Phrased differently, did the 1963 Legislature change or expand the meaning of 'manufacturer', or merely specifically define that word to have the same meaning as under the previous statutes? A statute is to be interpreted as the Legislature understood it at the time it was passed"); *Bahlkow v. Preston*, 244 N.W. 93 (S.D. 1932) ("In determining the meaning of the words 'threshing' or 'threshing operations', the meaning must be that which the Legislature intended and had in mind at the time it enacted the statutes concerning 'threshing' machines"); *Brown v. Mayor, Alderman and City of New York*, 63 N.Y. 239 (N.Y. 1875) ("But the intent of the legislature is to be collected from the language of the statute, applied to the subject-matter, and in view of public and notorious facts existing when the statute was enacted").

support of their motion confirm that information available to insurers in 2010 is incomplete, inconsistent from source to source, and often inaccurate.  *See* Joint Brief at 23-28.[18]

As demonstrated by the spreadsheet Defendants provided in support of their motions for summary judgment, third-party data available today is inconsistent from source to source with respect to thirteen of the fourteen vehicles at issue in these cases.  And, as Plaintiffs continue to supply more data, the problems with the data only become more apparent.  For example, Plaintiffs have now provided manufacturer data they obtained in discovery pursuant to subpoena (but had failed to supply to Defendants).  That new information from manufacturers is incomplete, inconsistent with data from other sources, and virtually useless for determining what antitheft devices are in particular vehicles.[19]

Faced with the indisputable inconsistencies in the data from source to source, Plaintiffs contend that insurers must "provide" the discount if even one data source indicates that a particular model car has a "passive" antitheft device, even if that source's definition of "passive"

---

[18] It bears repeating that a vehicle's VIN includes no information about antitheft devices, while the passive restraints in that vehicle can be identified directly from the digits of the VIN.  Defs.' Jt. Stmt. of Undisputed Facts, ¶ 45.  For that reason, the manuals HLDI has released each January from 2003 to 2010 identified the passive restraints in each make and model of vehicle listed, but contained no information whatsoever about the antitheft devices in those same vehicles.  *Id.*, ¶¶ 63-64 (citing and attaching Hazelbaker Dep. as Ex. G, in which HLDI's Senior Vice President noted that HLDI was able to include passive restraint data for vehicles immediately because that data was encompassed in the VIN, but was not able to provide antitheft data at the same time because the VIN does not include that data).

[19] *See* Defs.' Stmt. of Disputed Facts, ¶ 184; Joint Brief at 25-26 & n.40; Antitheft Spreadsheet, Ex. J to Defs.' Jt. Stmt. of Undisputed Facts; Chart, "Definitions for Engine Immobilizer vs. Statutory Definition."  This chart, illustrating deficiencies in information produced by manufacturers and the differences in third-party definitions of "engine immobilizer," is attached as Exhibit A hereto.

17

does not comport with the statutory definition and even if other sources disagree.[20]  The

following are just a few examples to illustrate how Plaintiffs shift their position to support each

individual Plaintiff's claim, even though the statute can have but one meaning applicable to all

Plaintiffs and all Defendants:

First, although the undisputed facts establish that State Farm gathers information from

multiple sources about whether a particular model car may have a passive antitheft device,

Plaintiffs claim State Farm's efforts are inadequate under the statute.  Specifically, Plaintiffs

suggest State Farm should have relied on third-party sources such as HLDI or ISO, and not State

Farm's own collection of antitheft device data.[21]  Plaintiffs make this assertion despite:  (1)

testimony from HLDI's Senior Vice President that an insurer should not rely on its data to

determine if a car had a passive device as defined by the MVFRL; (2) evidence from ISO that its

information should serve only "as a guideline" and "is subject to change without notice;" and (3)

the numerous inconsistencies between HLDI and ISO data and data from other sources, shown in

Defendants' spreadsheet.[22]

Second, in the case of *Warrick v. Allstate*, Plaintiffs take the inconsistent position of

rejecting HLDI's information, since HLDI reports that Warrick's 2003 Dodge Neon does not

have an antitheft device as standard equipment.  Accordingly, they contend HLDI made a

_____

[20] *See* Pls.' Mem. in Supp. of Mot. for Summ. J., *Lowe-Fenick*, at 14-20; Pls.' Mem. in Supp. of Mot. for Summ. J., *Baldoni*, at  20-28; Pls.' Mem. in Supp. of Mot. for Summ. J., *Willsch*, at 14-20; Pls.' Mem. in Supp. of Mot. for Summ. J., Allstate/Encompass Defendants, at 17-27; Pls.' Mem. in Supp. of Mot. for Summ. J., *Besecker*, at 14-20.

[21]  *See* Pls.' Mem. in Supp. of Class Cert., *Baldoni v. State Farm* (Doc. #48) at 28-30; Pls.' Mem. in Supp. of Summ. J., *Baldoni* (Doc #44) at 10, 21-23.

[22] Defs.' Jt. Stmt. of Undisputed Facts, ¶¶ 46, 59, 75-76 and Ex. J.

18

"mistake," and Allstate should look to another source, such as ISO or the owner's manual, or should have "picked up the phone and called either the manufacturer or a dealer," as if the Legislature could possibly have intended to impose that absurd burden.[23]   Other sources, however, also reported inconsistent data concerning the Neon.[24]

The inconsistencies in Plaintiffs' arguments are further revealed in their claims against Progressive, where, in support of Plaintiff James Boyle's claim, Plaintiffs contend Progressive should use information from HLDI and disregard the inconsistent information in the owner's manual for the same car. Specifically, HLDI's code for Boyle's 1999 Jeep Grand Cherokee indicates that it has a standard "Passive Fuel/Ignition/Electrical System Immobilizer."[25]   At his deposition, however, Mr. Boyle conceded that his owner's manual stated that the car had an immobilizer as optional, not standard, equipment.[26]   Plaintiffs also contend Progressive should rely on information provided by yet another source known as NETS, disregarding the testimony

---

[23] Pls.' Corrected Stmt. of Additional Uncontested Material Facts Relating to Allstate Ins. Co., at 34 & n.4.

[24] *See* Defs.' Jt. Stmt. of Undisputed Facts, ¶ 46 and Ex. J.

[25] *See* Pls.' Mem. in Supp. of Mot. for Summ. J., *Lowe-Fenick*, at 22 n.10.

[26] Progressive Stmt. of Undisputed Facts, ¶¶ 67-69.  Plaintiffs now claim, without any record support, that the manual Plaintiffs produced in discovery for Mr. Boyle's car covered more than one submodel, and that the "optional" language did not refer to his car.  Progressive Stmt. of Disputed Facts in Opposition to Pls. Stmt. of Uncontested Material Facts, ¶ 108.  Moreover, data from other sources concerning that same car is inconsistent – Polk identifies the car as having an unspecified "Antitheft Device," State Farm identifies it as having an "Optional Immobilizer," and Edmunds Vendor and Edmunds.com provide no data at all on the car.  Defs.' Jt. Stmt. of Undisputed Facts, ¶ 46 and Ex. J.

from the President of NETS that its list is *not* a definitive source of information about antitheft devices.[27]

Plaintiffs also take inconsistent positions with respect to ISO.  As noted above, Plaintiffs have claimed State Farm – and other insurers – should rely on ISO.  When Defendants produced expert testimony regarding the time lag in availability of ISO data (an annual problem which appears to exist for all the third party sources), Plaintiffs argued that this fact is irrelevant:  "If the ISO data is unreliable or too slow, as the Defendants now contend, . . . then Defendants are obligated to find a more expedient way to satisfy their legal obligations."[28]  Plaintiffs offer no suggestions as to what that "more expedient way" might be, since the evidentiary record is devoid of any.

In short, the burden Plaintiffs seek to impose on insurers, which was plainly unworkable in 1990, remains so even today.  As the Superior Court has stated, the General Assembly is presumed not to intend an unreasonable or impossible result, and the courts should avoid a construction of MVFRL provisions that "places entirely too great a burden on the insurer."  *Toth v. Donegal Cos.*, 964 A.2d 413, 419 (Pa. Super. Ct. 2009) (refusing to shift to insurer the burden of proving authenticity of insured's signature on a UIM rejection form).[29]

---

[27]  Defs.' Jt. Stmt. of Undisputed Facts, ¶¶ 92-98 and Ex. J.  Plaintiffs' statement at page 16 of its Progressive summary judgment brief that Progressive gives adjusters the NETS list so that they can deny theft claims is unsupported and false.  *See id.* ¶ 206.

[28]  Pls.' Mot. in Limine to Strike the Expert Report and Testimony of Eugene P. Ericksen, at 8.

[29]  In response to Plaintiffs' argument in Section II(C), Defendants have not claimed that Plaintiffs have no private right of action.

### 3.     Whether Plaintiffs' Cars Have a Qualifying Passive Antitheft Device Remains In Dispute

Regardless of whether the operative Pennsylvania statute should be interpreted to require insurers to engage in an independent investigation as to whether their policyholders' vehicles contain "passive antitheft devices," rather than ask their own insureds, Plaintiffs' motions for summary judgment should be denied because they cannot establish, through undisputed evidence, that their cars in fact have qualifying devices.[30]

Section 1799.1(b) specifically defines a "passive antitheft device" as a device "which is activated automatically when the operator turns the ignition key to the off position."  75 Pa. Cons. Stat. § 1799.1(b).  As set forth in Defendants' Joint Brief (at 30-32), when a statute defines its terms, the definition is binding, even if it differs from ordinary usage.  While Plaintiffs request summary judgment in their favor, they have not even attempted to show that the devices for which they seek discounts are "passive" under the statutory definition.  Instead, in disregard of the statutory definition imposed by the Legislature, they rely on a purported "industry definition" that differs from the statutory definition and argue that Defendants must apply a discount if a car has any device a manufacturer or other source describes as passive.[31]

---

[30] *See also* Peerless Mem. in Supp. of Mot. for Summ. J. (Doc. # 37) at 10-12; State Farm Mem. in Supp. of Mot. for Summ. J. (Doc. # 39, attachment #2) at 14-16; Progressive Mem. in Supp. of Mot. for Summ. J. at 4-6.

[31] Plaintiffs cannot obtain summary judgment unless they show that there is no genuine factual dispute that every device for which they seek a discount is a qualifying device under section 1799.1(b).  In contrast, any issues with respect to the definition of passive antitheft device do not impact Defendants' reading of the MVFRL's requirements or their right to summary judgment on Plaintiffs' claims.  Defendants chose to apply discounts when an insured represented that he or she had a passive antitheft device, and not to require evidence that the insured actually had a device or that it fit the strict statutory definition.  Joint Brief at 6 & n.8.

21

In seeking to establish what the "automobile industry" considers to be passive, Plaintiffs cite a range of different definitions from different sources, *none* of which tracks the statutory definition.  For example:

- Employee of Cars.com:  passive devices "engage automatically once the keys are removed or the doors are locked."  Pls.' Stmt. of Uncontested Material Facts, ¶ 42.

- R.L. Polk & Co.:  a device is passive if it is "activated automatically when the ignition key is turned on or off."  *Id.* ¶ 43.

- HLDI:  "a device is passive if it is automatically armed by the vehicle's doors being locked normally."  *Id.* ¶ 44.

- ISO:  passive device "requires no manual intervention in order for the device to be activated" (2008 release); "requires the operator to only lock the vehicle in order for the device to be activated" (2003 release).  *Id.* ¶ 45.

- NHTSA:  passive systems "are activated automatically by removing the key from the ignition and locking the doors."  *Id.* ¶ 46.

Plaintiffs' proffered expert on antitheft devices focused solely on engine immobilizers, which he claimed fit the industry definition (but not the statutory definition) of "passive."  Joint Brief at 31.  In all cases other than *Lowe-Fenick v. Progressive,* engine immobilizers are now the only devices Plaintiffs claim qualify for the statutory discount.  As Plaintiffs acknowledge, however, the term "engine immobilizer" can be used to describe a number of different kinds of devices that activate in different ways, and the "transponder" based devices Plaintiffs claim are

most prevalent now did not even exist until 1995.  Pls.' Stmt. of Uncontested Material Facts, ¶ 16.[32]

In *Lowe-Fenick v. Progressive* (but not in the other pending cases), Plaintiffs claim that "passive alarm systems" such as that in Lowe-Fenick's car also qualify for the statutory discount, even though the record indisputably shows that the alarm in her car is not activated by turning a key to the off position.[33]  In an apparent attempt to avoid this dispositive fact, Plaintiffs argue that discounts must be granted for such devices because some, but not all, third party definitions "extend the range of passive devices up through devices that activate through the ordinary locking of a car (e.g. car alarms like Plaintiff Lowe-Fenick's)."  Pls.' Mem. in Supp. of Mot. for Summ. J., *Lowe-Fenick,* at 17.  According to Plaintiffs, "these definitions confirm that the insurance industry does not consider removing a key, or locking a door, to be separate manual or active steps in activating an antitheft device."  *Id.* at 17-18.  In other words, according to

---

[32]   Plaintiffs quote from multiple sources regarding how various immobilizer devices allegedly work.  Many of the descriptions are different, and do not track the statutory definition.  *See, e.g., id.*, ¶ 17 (1997 manual; Passkey "is armed when the key is removed from the ignition"); ¶ 28 (2005 manual; Sentry Key system "does not need to be armed or activated"); ¶ 32 (1999 notice; Securilock "is activated when the driver/operator turns off the engine by using the properly coded ignition key"); ¶ 36 (2006 manual; for Mercedes SmartKey device, "Remove the SmartKey from the starter switch"; for KEYLESS-GO, "Turn[] off the engine by means of the start/stop button . . . on the gear selector lever"); ¶ 37 (2010 notice; Volkswagen immobilizer activates "automatically when the transponder key is removed from the ignition switch or when the key fob is taken outside the vehicle in the optional advanced key device") (all internal quotes omitted, emphases omitted).  *See also* Chart attached as Ex. A.

[33]   *See* Pls.' Mem. in Supp. of Mot. for Summ. J., *Lowe-Fenick,* at 13; Stmt. of Additional Uncontested Material Facts Relating to Progressive, ¶ 106 (quoting from Lowe-Fenick's owner's manual).  Plaintiffs also include alarm systems in their definition of the purported class in the lawsuit against Progressive, though not with respect to any of the other Defendants.  *Compare* Pls.' Mem. in Supp. of Mot. for Class Cert., *Lowe-Fenick,* at 1 n.1, *with* Pls.' Mem. in Supp. of Mot. for Class Cert. against all other Defendants,  at 1 n.1.

Plaintiffs, the statutory definition is irrelevant.  Pennsylvania courts, however, cannot ignore clear statutory definitions.  *See* Joint Brief at 30-32 (citing case support).

### B.    Plaintiffs Are Not Entitled to Summary Judgment on their Contract Claims

The sole basis pled in the complaints for Count II, "Breach of Implied Contract," was that Defendants breached implied terms of the parties' contracts by violating the MVFRL.  Thus, Plaintiffs' motion for summary judgment on Count II should be denied on the same grounds as those applying to Count I.  Plaintiffs now attempt to allege a few independent grounds for breach of contract.  None of these was asserted in the complaints, and none has merit.

First, Plaintiffs argue that Defendants' rate filings are incorporated into their contracts.[34] Regardless of whether that contention is true, it is irrelevant to Plaintiffs' claims.  None of the rate manuals filed by Defendants imposes upon the insurer an obligation to determine for itself, with no input from the insured, whether the insured's vehicle contains a qualifying antitheft device.[35]  Indeed, one Defendant's filed and approved antitheft device discount rule preserves the insurer's right to require evidence from the insured that an antitheft device was installed.[36]

---

[34] *See, e.g.*, Pls.' Mem. in Supp. of Mot. for Summ. J., *Lowe-Fenick*, at 26; Pl.'s Mem. in Supp. of Mot. for Summ. J., *Baldoni*, at 32; Pls.' Mem. in Supp. of Mot. for Summ. J., *Willsch*, at 24; Pls.' Mem. in Supp. of Mot. for Summ. J., Allstate/Encompass Defendants, at 31-32; Pls.' Mem. in Supp. of Mot. for Summ. J., *Besecker*, at 24-26.

[35] *See, e.g.*, State Farm Stmt. of Undisputed Facts, ¶ 3 and Aff. of David Menning in Supp. of State Farm's Mot. for Summ. J., Ex. A at BALA00000131REV; Allstate Property & Casualty Ins. Co. Stmt. of Undisputed Facts, ¶ 3 and Exs. 1 and 2; Encompass Indemnity Co. Stmt. of Undisputed Facts, ¶ 3 and Exs. 1 and 2; Allstate Indemnity Co. Stmt. of Undisputed Facts, ¶ 3 and Exs. 1 and 2; Allstate Insurance Co. Stmt. of Undisputed Facts, ¶ 3 and Exs. 1 and 2; Progressive Stmt. of Undisputed Facts, ¶ 4 and Ex. B; Peerless Stmt. of Undisputed Facts, ¶¶ 2-4; Nationwide Stmt. of Undisputed Facts, ¶ 1 (citing multiple exhibits)

[36] *See* Peerless Stmt. of Undisputed Facts, at ¶¶ 2-4 (Auto Manual Rule IV.A.1.c., "Refer to Company for required evidence of installation of anti-theft devices prior to granting a discount.")

Therefore, even if each of Defendant's rate filings were incorporated into its insurance policies, Plaintiff could establish a breach of those policies only if Defendants breached their statutory duties under the MVFRL.

Second, Plaintiffs appear to contend that, because each Defendant's policy authorizes the Defendant to use third-party information when calculating rates, each Defendant had an *obligation* to (a) consult every third-party source on the market, and (b) apply the antitheft device discount to *any* vehicle identified by *any* third-party source as having *any* type of passive antitheft device.[37]  This contention borders on the frivolous.  Insurance policies, like statutes, must be enforced according to their plain language.  *See, e.g.*, *Alleman v. State Farm Life Ins. Co.*, No. 07-4283, 2009 WL 1833604, at *2 (3d Cir. 2009).  Each Defendant's policy allows the insurer to use information from sources other than the insured to calculate the applicable premium.  For example, Progressive's policy states that the premium "is based on information we received from you and other sources."  Pls.' Mem. in Supp. of Mot. for Summ. J., *Lowe-Fenick*, at 26.  This language simply puts policyholders on notice that the insurer may use information from other sources; it does *not* impose an obligation on the insurer to gather all information that may be relevant to the calculation of the premium, regardless of what the insured says at the time of application.  Moreover, immediately following the language Plaintiffs quote at page 26 of their brief against Progressive, the Progressive policy makes clear that the insured has a responsibility to "cooperate with us in determining if this information [*i.e.*, the information on which the premium is based] is correct and complete."  Pls.' Appendix at 2040.

---

[37] *See, e.g.*, Pls.' Mem. in Supp. of Mot. for Summ. J., *Lowe-Fenick*, at 26; Pl.'s Mem. in Supp. of Mot. for Summ. J., *Baldoni*, at 34; Pls.' Mem. in Supp. of Mot. for Summ. J., *Willsch*, at 15-16; Pls.' Mem. in Supp. of Mot. for Summ. J., Allstate/Encompass Defendants, at 25; Pls.' Mem. in Supp. of Mot. for Summ. J., *Besecker*, at 26.

Similarly, policy language that an insurer "may" adjust a premium if information is incomplete, incorrect, or changes clearly does not impose an *obligation* upon the insurer to adjust a policyholder's premium simply because information is allegedly available from some third party about that policyholder's vehicle. *See, e.g.*, Pls.' Mem. in Supp. of Mot. for Summ. J., *Lowe-Fenick*, at 27; Pls.' Mem. in Supp. of Mot. for Summ. J., *Baldoni*, at 34.[38]

Third, Plaintiffs appear to suggest their contract argument is supported by the principle that the "reasonable expectations" of insureds should be fulfilled.[39]  They provide no explanation of how that principle supports their position, and a recent Third Circuit decision makes clear it does not.  *Alleman*, 2009 WL 1833604, at *2 ("The reasonable expectations doctrine is . . . inapplicable in the instant matter, which involves the price term of the policy and no allegation of any affirmative misrepresentation by the insurer.").

Finally, Plaintiffs appear to claim that Defendants are asserting lack of notice as an affirmative defense.[40]  This mischaracterizes Defendants' position, which is based not on an affirmative defense but upon the requirements imposed by the MVFRL.  Defendants simply observe, based on the statute's plain meaning, that the MVFRL does not require insurers to

---

[38]  In a footnote on page 26 of their brief against Progressive, Plaintiffs cite the general principle that insurers owe insureds a duty of good faith, but Pennsylvania courts have made clear that the duty of good faith does not require "hand holding and substituted judgment."  *Kilmore v. Erie Insurance Co.*, 595 A.2d 623, 626 (Pa. Super. 1991).

[39] Pls.' Mem. in Supp. of Mot. for Summ. J., *Lowe-Fenick*, at 28; Pls.' Mem. in Supp. of Mot. for Summ. J., *Baldoni*, at 34; Pls.' Mem. in Supp. of Mot. for Summ. J., *Willsch*, at 26; Pls.' Mem. in Supp. of Mot. for Summ. J., Allstate/Encompass Defendants, at 30; Pls.' Mem. in Supp. of Mot. for Summ. J., *Besecker*, at 26.

[40] Pls.' Mem. in Supp. of Mot. for Summ. J., *Lowe-Fenick*, at 27; Pl.'s Mem. in Supp. of Mot. for Summ. J., *Baldoni*, at 33; Pls.' Mem. in Supp. of Mot. for Summ. J., *Willsch*, at p. 25-26; Pls.' Mem. in Supp. of Mot. for Summ. J., Allstate/Encompass Defendants, at 25; Pls.' Mem. in Supp. of Mot. for Summ. J., *Besecker*, at 26.

determine for themselves whether a vehicle contains a qualifying antitheft device.  Thus, to
prove a statutory violation (or a breach of an implied contractual term), an individual
policyholder must prove not only that her vehicle contains an antitheft device that activates
automatically by turning the key to the "off" position, but also that she informed the insurer of
that fact and the insurer nonetheless failed to provide the discount.  Plaintiffs' argument
regarding notice is a transparent attempt to convert an element of their claims into an affirmative
defense.  It should be disregarded as such.[41]

In any event, the case upon which Plaintiffs rely is inapposite.  In *Brakeman v. Potomac
Insurance Co.*, an insurer sought to deny coverage under a liability policy due to the
policyholder's failure to provide timely notice of loss, as required by the terms of the policy.
371 A.2d 193, 194 (Pa. 1977).  The Supreme Court of Pennsylvania held that, to avoid liability
on account of late notice, the insurer would have to prove both that the notice provision was
breached and that the breach caused the insurer prejudice.  *Id.* at 198.  The present cases, of
course, do not involve coverage disputes, and Defendants are not trying to avoid their contractual
duties to insure their policyholders.  *Brakeman*'s principle, which limits an insurer's ability to
deny coverage due to late notice, has not been extended to other contexts, and simply does not
impact the requirements imposed on insurers by the MVFRL's antitheft device discount
provisions.  *See ACE Am. Ins. Co. v. Underwriters at Lloyds & Cos.*, 939 A.2d 935, 940 (Pa.
Super. Ct. 2007), *aff'd*, 971 A.2d 1121 (Pa. 2009) ("Pennsylvania has not extended the

---

[41] "As in other civil actions, the burden is on the plaintiff, in an action on an insurance policy, to
prove every fact in issue which is essential to his cause of action or right of recovery."  *Benjamin
v. Allstate Ins. Co.*, 511 A.2d 866, 868 (Pa. Super. Ct. 1986) (internal quotation marks omitted).

*Brakeman* 'notice-prejudice' rule beyond the context of occurrence liability policies." (quotation omitted)).

> ### C. Plaintiffs' Motions Should Be Denied Because They Failed to Comply with the Court's Scheduling Order

The Court issued an Amended Scheduling Order on May 13, 2010. *E.g., Baldoni v. State Farm,* Doc. # 30. The Order set a deadline of June 30, 2010, for summary judgment motions and motions for class certification. *Id.* at 2. The Order also set forth procedures for filing such motions. Under these procedures, each party moving for summary judgment was required to file "a Statement of Undisputed Facts which sets forth, in numbered paragraphs, all material facts which the movant contends are undisputed." *Id.* at 3. The Order specified that the moving party's statement of undisputed facts must include "specific and not general references to the parts of the record which support each of the statements," and must support "each stated fact" with a citation to "the source relied upon, including the title, page and line of the document supporting the statement." *Id.* at 3-4. These procedures were mandatory in the strictest possible sense: the Order makes clear that "Failure of the movant to follow this procedure in all respects *will result in the denial of the motion*." *Id.* at 4 (emphasis added).

On June 30, Plaintiffs filed motions for summary judgment in these related lawsuits. In the action against State Farm, Plaintiff Albert Baldoni did not file with the Court either a statement of undisputed material facts or a memorandum in support of his motion. The statement of undisputed material facts served on State Farm on June 30 (but not filed) was a draft; it was incomplete and unsigned. Further, while Baldoni filed an appendix of exhibits, that

28

appendix did not include at least thirteen of the documents Baldoni purports to rely upon in support of his motion.[42]

In the action against Peerless, Plaintiffs Robert and Denise Besecker failed to file a statement of undisputed material facts on June 30.  On July 1, the Beseckers served Peerless with a document that contained 222 paragraphs of facts pertaining to the joint Defendants and 113 paragraphs of facts pertaining to a Defendant *other* than Peerless.  When Peerless notified Plaintiffs' counsel of this error, Plaintiffs' counsel responded by emailing a draft document, incomplete, unsigned, and containing internal comments, with Peerless-related facts inserted as redline edits.[43]

Finally, in the actions against Progressive, Nationwide, and the various Allstate Defendants, Plaintiffs either failed to file statements of undisputed material facts, filed statements that did not contain facts specific to the particular Defendant, or filed statements that failed to provide record citations for each numbered paragraph.[44]

On July 1, Plaintiffs' counsel filed a letter with the Court, representing that his firm "encountered a number of technical difficulties, which had a significant impact on our ability to finalize these documents."  *E.g., Baldoni v. State Farm,* Doc. # 52.  Counsel did not file an

---

[42] Baldoni also failed to serve State Farm with a copy of the brief he filed in support of his Motion for Class Certification.  Instead, Baldoni served State Farm with 13 pages of the filed brief.  Counsel for State Farm brought this to the attention of Baldoni's counsel early on the morning of July 1 and were told that a complete brief would be served that day.  Despite this assurance from Baldoni's counsel, no brief in support of class certification was served on State Farm until July 8.  Aff. of James T. Moughan, counsel for State Farm, at ¶¶ 1-2, 7, 10 (Ex. B).

[43] Aff. of William C. Foster, counsel for Peerless, at ¶¶ 6-7 (Ex. C).

[44] Pls.' Stmt. of Uncontested Material Facts in Support of Pls.' Mot. for Summ. J. and Pls.' Mot. for Class Cert., as filed on June 30, 2010 in *Lowe-Fenick*, *Willsch*, *Bucari, Kolesar*, *Mecadon* and *Warrick*.

affidavit setting forth the nature of the "technical difficulties" or explaining how those difficulties resulted in missing or substantially incomplete documents on June 30 and filing/service delays of more than a week thereafter.  The following day (*i.e.,* July 2), Plaintiffs' counsel filed a motion for leave to file "corrected" memoranda in support of the various motions for summary judgment and class certification in these related lawsuits.  *Id.,* Doc. # 53.  In that motion, counsel indicated that "the substantive arguments and facts that entitle Plaintiffs to both class certification and summary judgment are set forth fully in the papers filed in support of the motion."  *Id.,* Doc. # 53-1, at 2.  Counsel asked for leave to correct missing citations and other errors in Plaintiffs' briefs, but did not disclose to the Court that Plaintiffs had failed to file, among other things, statements of undisputed material facts that complied with the Amended Scheduling Order.  On July 6, the Court granted the motion for leave in part, giving Baldoni until July 8 to make "non-substantive corrections" to his briefs only.  *Id.*, Doc. # 55.

On July 8, Plaintiffs – for the first time – filed and served complete statements of material facts against each of the Defendants.  Moughan Aff., ¶¶ 8-10; Foster Aff., ¶¶ 13-14.  These filings were not authorized by the Court's July 6 Order, which authorized Plaintiffs only to file non-substantive corrections to their briefs and made no mention of any other documents.  As such, they fail to remedy Plaintiffs' earlier noncompliance with the Amended Scheduling Order.

Under the clear terms of the Court's May 13 Amended Scheduling Order, Plaintiffs' Motions for Summary Judgment should be denied.

### III.    Conclusion

For the reasons set forth above and in Defendants' Joint Brief, Defendants respectfully

submit that Plaintiffs' Motions for Summary Judgment should be denied.

Respectfully submitted,

BY:    /s/ Robert N. Feltoon
       Robert N. Feltoon, Esquire
       PA# 58197
       Deborah J. Krabbendam, Esquire
       PA# 41856
       CONRAD O'BRIEN P.C.
       1515 Market Street, 16th Floor
       Philadelphia, PA  19102
       Tel: (215) 864-9600
       Fax: (215) 864-9620
       Attorneys for Defendant Progressive Specialty
       Insurance Company

BY:    /s/ James T. Moughan
       James T. Moughan, Esquire
       PA# 33045
       BRITT, HANKINS & MOUGHAN
       Two Penn Center Plaza, Suite 515
       15th Street and JFK Boulevard
       Philadelphia, PA 19102
       Tel:  (215) 569-6936
       Fax:  (215) 569-3711
       Attorney for Defendant State Farm Mutual
       Automobile Insurance Company

BY:    /s/ Michael R. Nelson
       Michael R. Nelson, Esquire
       PA# 65679
       G. Franklin McKnight IV, Esquire
       PA# 85701
       NELSON LEVINE de LUCA & HORST, LLC
       518 Township Line Road
       Suite 300
       Blue Bell, PA  19422
       Tel: (215) 358-5100

31

Fax: (215) 358-5101
Attorneys for Defendant Nationwide Insurance
Company of America


BY:     /s/ Mathieu J. Shapiro
        Thomas A. Leonard, Esquire    PA# 14781
        Mathieu J. Shapiro, Esquire    PA# 76266
        OBERMAYER REBMANN MAXWELL &
        HIPPEL LLP
        1617 John F. Kennedy Boulevard
        19th Floor, One Penn Center
        Philadelphia, PA  19103-1895
        Tel: (215) 665-3000
        Fax: (215) 665-3165
        Attorneys for Defendants Allstate Insurance
        Company, Allstate Property & Casualty Insurance
        Company, Allstate Indemnity Company, and
        Encompass Indemnity Company


BY:     /s/ William C. Foster
        William C. Foster, Esquire
        PA#03511
        MARSHALL, DENNEHEY, WARNER,
        COLEMAN & GOGGIN
        1845 Walnut Street
        Philadelphia, PA  19103
        Tel: (215) 575-4551
        Fax: (215) 575-0856
        Attorney for Defendant Peerless Indemnity
Date: July 16, 2010        Insurance Company

32