UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY AND SANDRA WILLSCH, on behalf of themselves and all others similarly situated,<br>      Plaintiff(s)<br>v.<br>NATIONWIDE INSURANCE COMPANY OF AMERICA<br>      Defendant(s) | Civil Action No: 09 5276 |

**DEFENDANT NATIONWIDE INSURANCE COMPANY OF AMERICA'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO PLAINTIFFS' CORRECTED STATEMENT OF UNCONTESTED MATERIAL FACTS RELATING TO NATIONWIDE INS. CO. OF AMERICA**

Defendant Nationwide Insurance Company of America hereby submits its Statement of Disputed Facts in Opposition to Plaintiffs' Corrected Statement of Uncontested Material Facts Relating to Nationwide Insurance Company of America.

**INTRODUCTORY STATEMENT**

On July 8, 2010 Plaintiffs filed their Corrected Statement of Uncontested Material Facts as well as Corrected Statements of Additional Uncontested Facts with respect to individual Defendants.[1] The "corrected" statements, however, continue to have significant defects, both procedural and substantive. Accordingly, Defendants have provided an Introductory Statement in their Joint Response to Plaintiffs' Corrected Statement of Uncontested Material Facts to summarize the defects and explain the form in which Defendants have put their responses. This Introductory Statement is incorporated herein by reference. Also, additional facts which preclude summary judgment for Plaintiffs are set forth in Defendants' Joint Statement of Undisputed

---

[1] Defendants' Joint Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment summarizes the problems with Plaintiffs' initial filings on June 30, 2010.

Facts and each Defendant's individual Statement of Undisputed Facts, which Defendant also incorporates here.

**DEFENDANT'S RESPONSE TO PLAINTIFFS' CORRECT STATEMENT OF ADDITIONAL UNCONTESTED MATERIAL FACTS**

1. Not Disputed.

2. Disputed on the basis that Plaintiffs mischaracterize the evidence and that the facts averred are not supported by their citations. Nationwide Insurance Company of America is a subsidiary of Allied Group, Inc. and Nationwide Mutual Insurance Company is the sole shareholder of Allied Group, Inc. In addition, the Nationwide Companies, not solely Nationwide Insurance Company of America, had $20.8 billion in total revenue and $716 million in net income in 2009. *See* Plaintiffs' App. 330 at 7939-7974. It is disputed that "Nationwide Mutual … has a four and seven tenths (4.7%) percent market share" on the basis that this fact is unsupported. By way of further response, Defendant disputes Plaintiffs' statement that "all" Nationwide companies that write automobile insurance in Pennsylvania share common employees. Defendant states that there are employees and procedures that are shared among the Nationwide companies and that personnel are located in Pennsylvania and Ohio.

3. Disputed on the basis that Plaintiffs mischaracterize the evidence, seek to draw unsupported inferences, and that the facts averred are not supported by their citations. Prior to 2005, the Defendants' database of information about vehicles ("VIN database") was largely populated using information from vehicle manufacturers *See* Transcript of May 24, 2010 Deposition of Thomas Rau, attached hereto as Exhibit "A," at p. 59 line 17-p. 60 line 5. The database only included rate symbols; it did not include any information about vehicle equipment, such as anti-theft devices. *See id.* at p. 62 lines 12-21.

4. Disputed on the basis that the facts averred overstate the citation and are vague and imprecise. In 2005, Defendant began incorporating information provided by ISO in its new VIN database. *See id.* at p. 50 lines 6-8. The new VIN database came online in early 2006. *See id.* at p. 54 lines 6-11. After early 2006, Defendant relied on the data provided by ISO, though its VINMASTER service, to the extent that Defendant trusted its accuracy enough to load ISO anti-theft data into its VIN database without further inspection. *See id.* at p. 55 line 12-p. 56 line 4; p. 91, lines 21-25. This reliance did not extend to the fact that an ISO "P" ("passive disabling") code should generate a passive anti-theft device discount in place of agent discussions with customers. *See id.* at p. 96 lines 12-18. Information regarding a policyholder's eligibility for an anti-theft discount is manually entered by agents into AOA while completing the application with the policyholder as prompted by the AOA system. *See* Defendants' Joint Statement of Undisputed Facts, at ¶ 8. Defendant's Agency Online Access system ("AOA") continues to require that agents indicate, as a mandatory step, whether or not a vehicle is equipped with a passive anti-theft device. *See id.* at ¶ 11. The undisputed evidence establishes that there currently exists no single definitive source of information showing which vehicle models come equipped with a passive antitheft device as standard equipment and that the information currently available from sources that purport to list which vehicles come standard with an antitheft device is often incomplete, inaccurate, and inconsistent between sources. *See* Defendants' Joint Statement of Undisputed Facts at 9–10 ¶ 42–43 (citing various sources). Furthermore, the information available on each of named plaintiff's vehicles is inconsistent between the sources of information upon which Plaintiffs allege Defendants should rely in granting the discount. *See* Defendants' Joint Statement of Undisputed Facts at 10, ¶ 46 (attaching Antitheft Spreadsheet showing inconsistencies between sources). Also, there is typically a time lag between when new vehicle

models are first released for sale or lease to the public and when antitheft device data for those models first becomes available from third-party sources. *See* Defendants' Joint Statement of Undisputed Facts at 11 ¶ 53.

5. Disputed on the basis that the facts averred overstate the citation and seek to draw unsupported inferences. In addition to symbols approximating vehicle value, also ISO provides Defendant with "safety information" on vehicles that may include an anti-theft device code; these codes are imported into Defendant's VIN database. *See* Transcript of May 24, 2010 Deposition of Thomas Rau, attached hereto as Exhibit "A," at p.92 line 3-p. 93 line 18. One of these codes, "P," stands for "Passive Disabling." *See* Ex. "B," Affidavit of Frank Baldizzi, Personal Lines Division Consultant for ISO (June 29, 2010) at ¶ 7.

6. Disputed on the basis that the facts averred overstate the citation, mischaracterize the evidence and seek to draw unsupported inferences. Two applications utilized by Defendant's agents to interface with Defendant on policies and ratings are Agency Online Access ("AOA") and National Platform. *See* Transcript of May 24, 2010 Deposition of Thomas Rau, attached hereto as Exhibit "A," p. 38 lines 7-25. After 2004 or 2005, these applications began accessing Defendant's BCS VIN application to obtain certain vehicle information from Defendant's VIN database. *See id.* at p. 39 lines 11-19; p. 40 lines 8-11; p. 41 lines 3-24; and p. 44 lines 2-4. The AOA system does not use ISO codes to determine whether a particular vehicle might be eligible to receive a passive anti-theft device discount when a VIN number is entered by a Nationwide agent. *See* Transcript of May 27, 2010 Deposition of Jacob Strevig, attached hereto as Exhibit "C," at p. 49, lines 11-16. Information regarding a policyholder's eligibility for an anti-theft discount is manually entered by agents into AOA while completing the application with the policyholder as prompted by the AOA system. *See* Defendants' Joint Statement of Undisputed

Facts, at ¶ 8. When populating the AOA system with vehicle information, the agent must indicate as a mandatory step whether or not the vehicle is equipped with a passive anti-theft device. *See id.* at p. 49 line 17-p. 50 line 10.

7. Disputed on the basis that the facts averred overstate the citation and mischaracterize the evidence. The AOA system does not apply a passive anti-theft device discount based on ISO codes. *See* Transcript of May 27, 2010 Deposition of Jacob Strevig, attached hereto as Exhibit "C," p. 49 lines 11-16. The Defendant's Internet quote and buying system available to consumers consults the anti-theft device codes provided by ISO in the Defendant's VIN database to apply a passive anti-theft device discount to policies purchased over the Internet. If the system cannot make that determination because the data is not available the question will be posed to the applicant. *See* Transcript of May 24, 2010 Deposition of Thomas Rau, attached hereto as Exhibit "A," p. 64 line-p. 67 line 3. The Internet quote and buying system was introduced by Defendant in 2006 or 2007. *See* Transcript of May 27, 2010 Deposition of Jacob Strevig, attached hereto as Exhibit "C," at p. 56 line 22-p. 57 line 9. Roughly one percent of Defendants' personal lines automobile insurance policy sales in Pennsylvania is obtained through the Internet quote and buying system. *See* Ex. "D," Affidavit of Tom Rau, Director of Property / Casualty Analytics at Nationwide Mutual Insurance Company (June 29, 2010) at ¶ 2.

8. Disputed on the basis that the facts averred mischaracterize the evidence. After a VIN number is entered, the AOA system will apply the passive restraint discount based on the digit in the VIN number signifying a passive restraint. *See* Transcript of May 27, 2010 Deposition of Jacob Strevig, attached hereto as Exhibit "C," at p. 45 line 23-p. 46 line 4. The passive restraint code within the Defendant's VIN database is used to apply the passive restraint

discount. *See* Transcript of May 24, 2010 Deposition of Thomas Rau, attached hereto as Exhibit "A," p. 63 lines 22-25.

9. Disputed on the basis that the facts averred are not supported by their citation, mischaracterize the evidence, and seek to draw unsupported inferences. As stated above at Paragraph 5, ISO provides Defendant with "safety information" on vehicles that may include an anti-theft device code and these codes are imported into Defendant's VIN database. *See id.* at p.92 line 3-p. 93 line 18. One of these codes, "P," stands for "Passive Disabling." See Ex. "B," Affidavit of Frank Baldizzi, Personal Lines Division Consultant for ISO (June 29, 2010) at ¶ 7. At stated at Paragraph 6, information regarding a policyholder's eligibility for an anti-theft discount is manually entered by agents into AOA while completing the application with the policyholder as prompted by the AOA system. *See* Defendants' Joint Statement of Undisputed Facts, at ¶ 8. When populating the AOA system with vehicle information, the agent must indicate as a mandatory step whether or not the vehicle is equipped with a passive anti-theft device. *See* Transcript of May 27, 2010 Deposition of Jacob Strevig, attached hereto as Exhibit "C," at p. 49 line 17-p. 50 line 10.

10. Disputed on the basis that the facts averred overstate the citation to the extent that, as stated above, information regarding a policyholder's eligibility for an anti-theft discount is manually entered by agents into AOA while completing the application with the policyholder as prompted by the AOA system. *See* Defendants' Joint Statement of Undisputed Facts, at ¶ 8. When populating the AOA system with vehicle information, the agent must indicate as a mandatory step whether or not the vehicle is equipped with a passive anti-theft device. *See id.* at p. 49 line 17-p. 50 line 10.

11. Disputed on the basis that the facts averred are inaccurate, mischaracterize the evidence, and seek to draw unsupported inferences. Defendant's 30(b)(6) deponent Jacob Strevig did not know whether Defendant provided its agents in Pennsylvania with lists of vehicles that qualify for the anti-theft discount and stated that a list of eligible passive anti-theft devices is not provided to agents beyond the Defendants' Notice of Availability provided to consumers at the time of application and at every renewal *See id.* at 68 line 18-p. 69 line 14.

12. Disputed on the basis that the facts averred overstate the citation, mischaracterize the evidence and seek to draw unsupported inferences. The portion of the deposition transcript cited by Plaintiffs only states that Defendant's Internet quote and buying system will apply a passive anti-theft device discount based on the input of vehicle make, model, and year. *See id.* at p. 56 lines 19-21. As stated above at Paragraph 7, the Defendant's Internet quote and buying system available to consumers consults the anti-theft device codes provided by ISO in the Defendant's VIN database to apply a passive anti-theft device discount to policies purchased over the Internet. If the system cannot make that determination because the data is not available the question will be posed to the applicant. *See* Transcript of May 24, 2010 Deposition of Thomas Rau, attached hereto as Exhibit "A," p. 64 line-p. 67 line 3. The Internet quote and buying system was introduced by Defendant in 2006 or 2007. *See* Transcript of May 27, 2010 Deposition of Jacob Strevig, attached hereto as Exhibit "C," at p. 56 line 22-p. 57 line 9. Roughly one percent of Defendants' personal lines automobile insurance policy sales in Pennsylvania is obtained through the Internet quote and buying system. *See* Ex. "D," Affidavit of Tom Rau, Director of Property / Casualty Analytics at Nationwide Mutual Insurance Company (June 29, 2010) at ¶ 2.

13. Disputed on the basis that the facts averred mischaracterize the evidence and that the paragraph contains unsupported argument. Defendant's Pennsylvania Auto Policy, under General Policy Conditions – How Your Policy May Be Changed, states under sections (d) and (e) as follows:

> (d) The premium for each coverage is based on information in our possession. Any change or correction in this information will allow us to make an adjustment of the premium as of the date the change is effective.
>
> (e) The policyholder has a duty to notify us as soon as possible of any change which may affect the premium or risk under this policy…

The remaining portion of this paragraph is solely argument and should be stricken. Plaintiffs stretch the language to apply beyond Defendant's right to make policy changes and premium adjustments by interpreting it in an impossible manner.

14. Disputed on the basis that the facts averred are inaccurate, overstate the citation and seek to draw unsupported inferences. Defendant's 30(b)(6) witness Jacob Strevig stated that he did not know if Discount Finder scanned policies to evaluate their eligibility for a passive anti-theft discount. *See* Transcript of May 27, 2010 Deposition of Jacob Strevig, attached hereto as Exhibit "C," at p. 62 line 7-p. 63 line 21.

15. Disputed on the basis that the facts averred mischaracterize the evidence and with respect to Internet purchases is nonsensical. Defendant's 30(b)(6) witness Jacob Strevig stated that, with respect to insurance purchased through one of Defendant's agents, underwriters check that the agent logged the appropriate trailing documentation of passive anti-theft discount eligibility, which is kept in the agent's office and is typically a copy of the owner's manual. *See id.* at p. 51 line 19-p. 52 line 7; p. 89 lines 1-10. The AOA system does not use ISO codes to apply passive anti-theft device discounts. *See id.* at p. 53 line 14-p. 54 line 12. As stated above at

Paragraph 7, the Defendant's Internet quote and buying system available to consumers consults the anti-theft device codes provided by ISO in the Defendant's VIN database to apply a passive anti-theft device discount to policies purchased over the Internet. If the system cannot make that determination because the data is not available the question will be posed to the applicant. *See* Transcript of May 24, 2010 Deposition of Thomas Rau, attached hereto as Exhibit "A," p. 64 line-p. 67 line 3. The Internet quote and buying system was introduced by Defendant in 2006 or 2007. *See* Transcript of May 27, 2010 Deposition of Jacob Strevig, attached hereto as Exhibit "C," at p. 56 line 22-p. 57 line 9. Roughly one percent of Defendants' personal lines automobile insurance policy sales in Pennsylvania is obtained through the Internet quote and buying system. *See* Ex. "D," Affidavit of Tom Rau, Director of Property / Casualty Analytics at Nationwide Mutual Insurance Company (June 29, 2010) at ¶ 2.

16. Disputed on the basis that the facts averred are inaccurate, mischaracterize the evidence, and that the paragraph contains unsupported argument. Defendant's 30(b)(6) witness Jacob Strevig stated that a possible check on the appropriateness of passive anti-theft device discount offerings could come through a Portfolio Analyst's review of outlier agencies with a high volume of such offerings. Mr. Strevig was not aware of any audits by Defendant of agencies in Pennsylvania based on the fact that the level of passive anti-theft device discounts was too low or too high. *See* Transcript of May 27, 2010 Deposition of Jacob Strevig, attached hereto as Exhibit "C," at p. 52 line 8-p. 52 line 13. No testimony was elicited that Defendant does not perform audits of agencies that have low levels of customers receiving the passive anti-theft device discount.

17. Not disputed.

18. Disputed to the extent that the lead-in language to this fact is argument that misstates Defendant's passive anti-theft device discount. The Anti-Theft Device Discount provision begins: "A 10% discount (multiply by .90) in Comprehensive premium is applicable for vehicles equipped with the following anti-theft device: …"

19. Not disputed.

20. Defendant disputes any allegation that Plaintiffs' vehicles have passive anti-theft devices as specifically defined under Pennsylvania statute. The information provided by Ford makes no mention of the Pennsylvania statute, and does not discuss how the Ford devices are activated or whether they fit the specific definition set forth in the Pennsylvania statute. *See* Plaintiffs' Appendix at 4904-4905. The undisputed evidence establishes that there currently exists no single definitive source of information showing which vehicle models come equipped with a passive antitheft device as standard equipment and that the information currently available from sources that purport to list which vehicles come standard with an antitheft device is often incomplete, inaccurate, and inconsistent between sources. *See* Defendants' Joint Statement of Undisputed Facts at 9–10 ¶ 42–43 (citing various sources). Furthermore, the information available on each of named plaintiff's vehicles is inconsistent between the sources of information upon which Plaintiffs allege Defendants should rely in granting the discount. *See* Defendants' Joint Statement of Undisputed Facts at 10, ¶ 46 (attaching Antitheft Spreadsheet showing inconsistencies between sources). By way of further response, Robert Mangine explicitly stated that engine immobilizer systems like SecuriLock do not activate automatically when the key is turned to the off position and therefore would not qualify under the statutory definition. *See* Defendants' Joint Statement of Undisputed Facts at 9, ¶ 39 (citing Mangine Report at 8-9).

21. Disputed to the extent that the facts averred overstate the citation and seek to draw unsupported inferences. At the time of release of Plaintiffs supporting documentation, which does not appear to be stated for the 2004 Ford Explorer and appears to be July 29, 2009 for the 2008 Ford Expedition, ISO had determined that the vehicles were equipped with a "passive disabling" anti-theft device and gave the vehicles a code of "P." Defendant disputes any allegation that Plaintiffs' vehicles have passive anti-theft devices as specifically defined under Pennsylvania statute. The undisputed evidence establishes that there currently exists no single definitive source of information showing which vehicle models come equipped with a passive antitheft device as standard equipment and that the information currently available from sources that purport to list which vehicles come standard with an antitheft device is often incomplete, inaccurate, and inconsistent between sources. *See* Defendants' Joint Statement of Undisputed Facts at 9–10 ¶ 42–43 (citing various sources). Furthermore, the information available on each of named plaintiff's vehicles is inconsistent between the sources of information upon which Plaintiffs allege Defendants should rely in granting the discount. *See* Defendants' Joint Statement of Undisputed Facts at 10, ¶ 46 (attaching Antitheft Spreadsheet showing inconsistencies between sources). By way of further response, Robert Mangine explicitly stated that engine immobilizer systems like SecuriLock do not activate automatically when the key is turned to the off position and therefore would not qualify under the statutory definition. *See* Defendants' Joint Statement of Undisputed Facts at 9, ¶ 39 (citing Mangine Report at 8-9).

22. Disputed to the extent that the facts averred mischaracterize the evidence. The manuals state that the system will "prevent the engine from being started." *See* Plaintiffs' App. 314; and Plaintiffs' App. 320.

23. Disputed to the extent that the facts averred overstate the citation and seek to draw unsupported inferences. At the time Plaintiffs viewed the website on June 4, 2010, it lists a SecuriLock Engine Immobilizer on the 2004 Explorer and 2008 Expedition. *See* Plaintiffs' App. 232, 233 at 4942-4947. Defendant disputes that the information on that site is accurate or consistent with information from other sources. The undisputed evidence establishes that there currently exists no single definitive source of information showing which vehicle models come equipped with a passive antitheft device as standard equipment and that the information currently available from sources that purport to list which vehicles come standard with an antitheft device is often incomplete, inaccurate, and inconsistent between sources. *See* Defendants' Joint Statement of Undisputed Facts at 9–10 ¶ 42–43 (citing various sources). Furthermore, the information available on each of named plaintiff's vehicles is inconsistent between the sources of information upon which Plaintiffs allege Defendants should rely in granting the discount. *See* Defendants' Joint Statement of Undisputed Facts at 10, ¶ 46 (attaching Antitheft Spreadsheet showing inconsistencies between sources).

24. Disputed to the extent that the facts averred mischaracterize the evidence and seek to draw unsupported inferences. Defendants' Response to Plaintiffs' Interrogatory No. 11 provided, "NICOA has been presently unable to ascertain a specific reason as to why Plaintiffs did not receive an anti-theft device discount, although such could have occurred because plaintiffs failed to request the discount or make their Nationwide agent aware that the discount applied." *See* Plaintiffs' App. 89 at 01471. Defendant disputes any allegation that Plaintiffs' vehicles have passive anti-theft devices as specifically defined under Pennsylvania statute. The undisputed evidence establishes that there currently exists no single definitive source of information showing which vehicle models come equipped with a passive antitheft device as

standard equipment and that the information currently available from sources that purport to list which vehicles come standard with an antitheft device is often incomplete, inaccurate, and inconsistent between sources. *See* Defendants' Joint Statement of Undisputed Facts at 9–10 ¶ 42–43 (citing various sources). Furthermore, the information available on each of named plaintiff's vehicles is inconsistent between the sources of information upon which Plaintiffs allege Defendants should rely in granting the discount. *See* Defendants' Joint Statement of Undisputed Facts at 10, ¶ 46 (attaching Antitheft Spreadsheet showing inconsistencies between sources). By way of further response, Robert Mangine explicitly stated that engine immobilizer systems like SecuriLock do not activate automatically when the key is turned to the off position and therefore would not qualify under the statutory definition. *See* Defendants' Joint Statement of Undisputed Facts at 9, ¶ 39 (citing Mangine Report at 8-9).

25. Disputed on the basis that the facts are inaccurate, mischaracterize the evidence, and are vague. In response to Plaintiffs' questions, Defendant's 30(b)(6) witness Tom Rau stated that he was not aware of any analysis of the ISO data as it related to the passive anti-theft device discount in Pennsylvania or communications between the Defendant and ISO on the application passive anti-theft device discount in Pennsylvania. *See* Transcript of May 24, 2010 Deposition of Thomas Rau, attached hereto as Exhibit "A," p. 99 lines 2-18.

26. Not disputed.

NELSON LEVINE de LUCA & HORST, LLC

                    BY:  /s/ Michael R. Nelson
                         Michael R. Nelson (I.D. 65679)
                         G. Franklin McKnight (I.D. 85701)
                         518 Township Line Rd., Suite 300
                         Blue Bell, PA 19422
                         Phone: 215.358.5100
                         mnelson@nldhlaw.com
                         fmcknight@nldhlaw.com
                         Attorney for Defendants
                         Nationwide Insurance Company of America

Dated: July 16, 2010

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY AND SANDRA WILLSCH, on behalf of themselves and all others similarly situated,<br>　　　　Plaintiff(s)<br>　　v.<br>NATIONWIDE INSURANCE COMPANY OF AMERICA<br>　　　　Defendant(s) | Civil Action No: 09 5276 |

CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2010, I filed Defendant's Statement of Disputed Facts in Opposition to Plaintiffs' Corrected Statement of Uncontested Material Facts Relating to Nationwide Insurance Company of America with the Clerk of Court using the CM/ECF system, which will send notification of such filing to registered counsel electronically.

**NELSON LEVINE de LUCA & HORST, LLC**

BY: /s/ Michael R. Nelson
　　　Michael R. Nelson (I.D. 65679)
　　　G. Franklin McKnight (I.D. 85701)
　　　518 Township Line Rd., Suite 300
　　　Blue Bell, PA 19422
　　　Phone: 215.358.5100
　　　mnelson@nldhlaw.com
　　　fmcknight@nldhlaw.com
　　　Attorney for Defendants
　　　Nationwide Insurance Company of America