# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLISCH, et al, | ) | |
|                Plaintiffs, | ) | |
| v. | ) | Civil Action No. 09-5276-TJS |
| NATIONWIDE INSURANCE CO. OF AMERICA, | ) | Judge Timothy J. Savage |
|                Defendant. | ) | |
| KOLESAR, et al. | ) | |
|                Plaintiffs, | ) | |
| v. | ) | Civil Action No. 09-5510-TJS |
| ENCOMPASS INDEMNITY CO. | ) | Judge Timothy J. Savage |
|                Defendant. | ) | |
| MECADON, | ) | |
|                Plaintiff, | ) | |
| v. | ) | Civil Action No. 09-5511-TJS |
| ALLSTATE INDEMNITY CO., | ) | Judge Timothy J. Savage |
|                Defendant. | ) | |
| RONALD and KIM BUCARI, et al. | ) | |
|                Plaintiffs, | ) | |
| v. | ) | Civil Action No. 09-5512-TJS |
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, | ) | Judge Timothy J. Savage |
|                Defendant. | ) | |
| BESECKER, et al., | ) | |
|                Plaintiffs, | ) | |
| v. | ) | Civil Action No. 09-5513-TJS |
| PEERLESS INDEMNITY INSURANCE CO., | ) | Judge Timothy J. Savage |
|                Defendant. | ) | |

| | | |
|---|---|---|
| BALDONI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-5514-TJS |
| | ) | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., | ) ) ) | Judge Timothy J. Savage |
| | ) | |
| Defendant. | ) | |
| LOWE-FENICK,, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-5515-TJS |
| | ) | |
| PROGRESSIVE SPECIALTY INSURANCE CO., | ) ) ) | Judge Timothy J. Savage |
| | ) | |
| Defendant. | ) | |
| WARRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-6077-TJS |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) ) | Judge Timothy J. Savage |
| | ) | |
| Defendant. | ) | |

# PLAINTIFFS' JOINT REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT

TRUJILLO RODRIGUEZ & RICHARDS, LLC
Ira Neil Richards (Atty. I.D. 50879)
Kenneth I. Trujillo (Atty. I.D. 46520)
Gary M. Goldstein (Atty. I.D. 81225)
Jennifer Agnew (Atty. I.D. 206673)
1717 Arch Street Suite 3838
Philadelphia, PA  19103
Telephone:  (215) 731-9004
Facsimile:  (215) 731-9044

CAPUTO & MARIOTTI, P.C.
Joseph E. Mariotti
Christopher Caputo
730 Main Street
Moosic, Pennsylvania 18507
Telephone:  (570) 342-9999
Facsimile:  (570) 457-1533

# TABLE OF CONTENTS

*Page(s)*

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ........................................................................... ii

ARGUMENT ................................................................................................... 1

I.    DEFENDANTS' STATUTORY CONSTRUCTION IS UNTENABLE ....... 1

II.   DEFENDANTS HAVE BREACHED THEIR CONTRACTS ...................... 6

III.  THE SUBSTANCE OF THE RECORD SUPPORTS SUMMARY
     JUDGMENT FOR PLAINTIFFS ................................................................ 8

CONCLUSION ............................................................................................... 10

# TABLE OF AUTHORITIES

                                                                                                                                 Page(s)

**CASES**

*Brakeman v. Potomac Insurance Co.*,
   371 A.2d 193 (Pa. 1977) .................................................................................. 8

*Glaser v. Prudential Ins. Co. of Am.*,
   157 Pa. Super. 471, 475 (1945) ................................................................... 5, 5

*Missouri Pacific Railroad v. National Milling Co.*,
   409 F.2d 882, 885 (3d Cir.1969) ................................................................... 10

*Philadelphia Electric Company v. Aetna Casualty & Surety Co.*,
   484 A.2d 768 (Pa. Super. 1984) ...................................................................... 8

*Plouse v. Richardson*,
   334 F.Supp. 1086, 88-89 (W.D. Pa. 1971) .................................................... 10

*Vanderhoff v. Harleysville Insurance Company*,
   2010 Pa. Lexis 1419 (Pa. July 6, 2010) .......................................................... 8

**STATUTES**

1 Pa. C.S. §1921(a) ................................................................................................ 1

1 Pa. C.S. §1922; 1 ................................................................................................ 1

1 Pa. C.S. §1928(c) ................................................................................................ 2

40 Pa. C.S. § 1184 ................................................................................................. 7

75 Pa. C.S. § 1799.1 ........................................................................................... 1, 2

75 Pa C.S. § 1318 .................................................................................................. 4

## ARGUMENT

### I. DEFENDANTS' STATUTORY CONSTRUCTION IS UNTENABLE

This litigation has caused Defendants to make some extraordinary arguments. Thus, Defendants now tell the Court that the General Assembly passed legislation intended to lower the cost of automobile insurance by not requiring insurance companies to actually give a premium discount to anyone. Defendants argue that all they need do to under 75 Pa. C. S § 1799.1 (the "Statute") is include in their rate filings an antitheft discount and then send out notices that this and other discounts are available (Defs. Br. at 7) -- but that they don't have to actually *give* the discount to *anyone* even though the insured's car has precisely the type of antitheft device the legislation was meant to encourage. Tellingly, Defendants' brief completely avoids identifying when -- if ever -- Defendants are *required* to give the discount. It is difficult to identify why the General Assembly would want to pass such a statute or what policy that would serve. *See* 1 Pa. C. S. §1921(a); 1 Pa. C. S. §1922; 1 Pa.C.S. §1928(c). The interpretation urged by Defendants defies established principles of statutory interpretation and logic.[1]

---

[1] The flaws in Defendants' arguments are discussed in greater detail in Plaintiffs' Joint Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Plaintiffs' Mem."). Given the identity of issues and arguments, Plaintiffs have attempted to avoid unnecessarily repeating Plaintiffs' Mem. Similarly, Plaintiffs' class certification briefs address Defendants' arguments.

Equally far-fetched is Defendants' argument that in fact there are no passive antitheft devices on cars in Pennsylvania anyway. According to Defendants, the act of *taking the key out of the ignition* precludes an engine immobilizer – universally recognized in the automobile and insurance industries and by the federal government as a passive antitheft device -- from qualifying for a discount. In other words, according to Defendants, in Pennsylvania the only passive antitheft devices are those that require the driver to *leave the key in the ignition*. Likewise, Defendants assert that routine door locking is an "active" step that disqualifies a device from getting a discount. That is nonsense. If Defendants' assertions about what qualifies are right, then the General Assembly either intended that Pennsylvanians stay in their cars with the keys in the ignition and the doors closed or that nothing qualifies for a discount. *See* Plaintiffs' Joint Mem. at 31-36. Defendants urge a nonsensical interpretation.

Not surprisingly, Defendants' conduct *before* this litigation began confirms that Plaintiffs all have passive antitheft devices that qualify for a discount. Defendants state as an undisputed fact that all alarms activate by locking a door. *See Defendants' Joint Statement of Material Facts* ¶ 31. And, before these cases began, they told consumers that alarms *qualify* for the discount.[2] That is, they told

---

[2] *See* SOUMF(Pro)¶¶27,29; SOUMF(A)¶¶ 158,169; App. 95 at 01640; State Farm Statement of Facts ¶¶ 7-9; Allstate Statements of Fact Ex. 12 (Bucari), Ex. 9 (Mecadon), Exs 2 and 7 (Kolesar), Ex. 11 (Warrick).

2

consumers that devices that activate through locking a door *do* qualify. They also said before these cases began that taking a key out of the ignition doesn't matter.³ Their about-face now for purposes of this litigation is untenable.

The same strained quality is reflected in Defendants' repeated argument that in 1990, there were no readily available databases telling which cars come equipped with which devices.⁴ It is irrelevant, though, whether there existed a third-party database at the time; other sources were readily available. The Statute, not the state of technology, creates the obligation to provide the discount.⁵ *See* Plaintiffs' Joint Mem. at 16-17.

Revealingly, 75 Pa C.S. § 1318 is part of the same bill the General Assembly passed when it enacted the Statute. That provision requires a title agent like a car

---

³ *See* SOUMF ¶¶ 61-63; *see also* Plaintiffs' Joint Reply Memorandum of Law In Support of Plaintiffs' Motions for Class Certification at 5-7 and Exhibit A thereto.

⁴ Defendants insist that the only relevant time period to consider is 1990, when the Statute was passed. That is plainly not correct. The relevant time period to consider is the time period covered by this litigation, 2003 to the present. However, even accepting Defendants' proposition *arguendo*, their argument fails. Undeniably, in 1990, information concerning automobiles' standard equipment was available from the manufacturers and dealers. While Defendants try to divert attention by talking about responses to subpoenas in this case (*See,* e.g., ¶ 78 of Defendants' Joint Statement Of Disputed Facts), the undisputed facts show that Defendants can and did contact manufacturers to obtain antitheft device information, even though they did not use the information to provide the discount. *See* SOUMF ¶¶ 178-211.

⁵ Defendants ridicule the idea that they should check with manufacturers (Defs. Br. at 19). In fact, it seems totally reasonable to expect this or similar conduct by an insurer. This is, after all, central to Defendants' business.

3

dealer to get proof of insurance before a car can be titled; that is, a car cannot leave the lot without plates and insurance. Thus, the General Assembly clearly contemplated that there would be communication between the insurer and the dealer when a vehicle is purchased. How big an imposition would it be – in 1990 or today – for the insurer to ask the dealer when it is providing proof of insurance if the car has an engine immobilizer or other passive device? Plainly, from 1990 to the present, Defendants have had ample access to all the information they need to provide the discount to vehicles with passive devices. It is, after all, Defendants' business to know about cars; the record proves Defendants build databases capturing cars' standard features, which they use as a routine part of their multi-million dollar businesses. Defendants' discussion of third party databases is a distraction.

Defendants repeatedly urge that they have a legal right to ask questions of customers, yet Plaintiffs do not dispute that. What Defendants *cannot* do is shift to consumers the burden of asking for a discount when the Statute places the burden on Defendants to provide it. It would be one thing if this were information such as a personal medical history that each person would know better than the insurer. But the fact is that most people, including Defendants' own employees, do <u>not</u> know about passive antitheft devices. *See* Plaintiffs' Joint Response to Defendants' Joint Statement of Undisputed Facts ¶ 41. On the other hand,

4

Defendants *do* know and have available to them a mountain of information to determine whether a car has a passive antitheft device. *See* SOUMF ¶¶64-211.[6] An ordinary consumer has no reason to know what an immobilizer is; to an insurance company, it is the air that they breathe. It is what they do for a living.

Defendants' recitation of cases saying an insurer has "a right to rely" on customers (Defs. Br. at 8) is utterly misplaced – and more than a little cynical. Defendants extract language from cases where an insured has withheld information about medical issues. *e.g. Glaser v. Prudential Ins. Co. of Am.*, 157 Pa. Super. 471, 475 (1945) ("The insured was bound to have knowledge of the correct answers to those questions..."). Defendants cannot seriously suggest that consumers are *withholding* information that would save them 10 percent on their comprehensive premiums.[7] The undisputed facts show that consumers don't claim the discount because *they don't know* they qualify for it. It is equally undeniable that Defendants do know. Defendants ask questions (to which they already know the answers) of consumers (whom they know will almost certainly *not* know the answers) and then argue to this Court that they should "be able to rely on the

---

[6] Defendants' post-litigation arguments that the databases they use to run their businesses conflict with other sources that they never consulted are addressed in Plaintiffs' Joint Mem. at 18-24; *see also* Plaintiffs' Joint Response to Defendants' Statement of Uncontested Facts ¶46.

[7] *See* Plaintiffs' Joint Mem. At 24-27,

5

answers. That is perverse. This is not a game,[8] but a serious piece of legislation designed to save consumers money. Defendants' proposed construction of the Statute should not be countenanced.

## II.  **DEFENDANTS HAVE BREACHED THEIR CONTRACTS**

Defendants do not respond in any direct way to Plaintiffs' contract claims. Plaintiffs claim that: (a) the Statute is incorporated into the Defendants' contracts and that a violation of the Statute is a breach of contract; (b) Defendants' rate filings are incorporated into their contracts, which Defendants breached by charging premiums higher than their rate filings permit; and (c) Defendants' contracts require them to calculate the premiums accurately and to fix their calculations when they are wrong.

Aside from arguing that they did not violate the Statute, Defendants' response to the contract claim essentially is limited to the argument that there are no cars that qualify for a discount in Pennsylvania. But if they lose on that argument, as surely they must,[9] they have *no* defense to Count II. With respect to Defendants' rate filings, the filings themselves say that if a car has a qualifying

---

[8]  Defendants' arguments cannot help but recall the Groucho Marx game show *You Bet Your Life* where "if you say the secret word, the duck comes down and you win the money."

[9]  *See also* Plaintiffs' Joint Mem. at 31-36.

device, the discount will be applied.[10] Under 40 Pa. C.S. § 1184(h), "no insurer shall make or issue a contract or policy except in accordance with the filing or rates which are in effect for said insurer... ." Defendants do not mention 40 Pa. C.S. § 1184 anywhere in their 31-page brief. This is surely a studied silence.

With regard to their form contracts, Defendants seek to re-characterize what the contracts say. They thus argue that, contrary to the plain words of the contract, they merely *may* refer to other sources if they wish. (Defs. Br. at 25.)[11] But as a matter of undisputed fact, Defendants *did* get information from other sources; they just refused to use that available information to apply the discount. Nationwide, for instance, whose form contract says it will use information in its "possession," uses the ISO antitheft information that it has to give its Internet customers the discount, but doesn't use it for the 99 per cent of consumers who use Nationwide agents.

---

[10] *See* SOUMF(A)¶¶ 176-203; SOUMF(N)¶¶ 17-18; SOUMF(P)¶¶ 55-56; SOUMF(S)¶14-15; *see also* Plaintiffs' Joint Mem. at 6-7.

[11] Defendants also argue that later in the policy, using Progressive as an example, that it requires the insured to "cooperate with us in determining if this information is correct." *Id.* Defendants never finish the argument, but presumably it is a variation of the argument earlier discussed that somehow insureds are *withholding* information that would save them 10% on their comprehensive premiums. It makes no sense. The insureds have cooperated fully by giving the make, model and VIN, which tells Defendants everything they need to know to give the discount. *See* Plaintiffs' Joint Mem. at 24-27.

Defendants misunderstand the relevance of *Brakeman v. Potomac Insurance Co.*, 371 A.2d 193 (Pa. 1977). Only three weeks ago, the Pennsylvania Supreme Court reaffirmed the continuing vitality of *Brakeman,* applying its principles to interpret part of the MVFRL. *See Vanderhoff v. Harleysville Insurance Company,* 2010 Pa. Lexis 1419 (Pa. July 6, 2010). *Brakeman's* significance is in what it says about the relationship between a consumer and an insurer. *Brakeman* recognizes that the relationship is not between parties of equal bargaining power and access to information. As a result, before an insurer will be able to claim lack of notice as a defense (as here Defendants claim that the insureds never *told* them that they qualified for the discount), the insurer will have to show prejudice. Here, the undisputed facts show Defendants cannot do that since each knew or deliberately chose not to know the information they argue the insureds failed to tell them. *See, e.g., Philadelphia Electric Company v. Aetna Casualty & Surety Co.,* 484 A.2d 768 (Pa. Super. 1984) (while insured failed to give notice of an accident, insurer had notice from another source and thus could not avoid coverage).

### III. THE SUBSTANCE OF THE RECORD SUPPORTS SUMMARY JUDGMENT FOR PLAINTIFFS

Defendants' last argument is that Plaintiffs' summary judgment motions should be denied because Plaintiffs failed to comply with the Court's scheduling order. Defendants complain that the documents filed and served on June 30 were

incomplete and jumbled. Regrettably, Defendants are substantially correct about the documents.[12] That is why, the very next day, July 1, we filed a Statement with the Court pointing out mistakes and apologizing to Defendants and the Court, and on July 2 filed a motion requesting permission to file corrected papers and an adjusted briefing schedule. The Court granted the motion in part, making the corrected papers due July 8. Defendants now contend that the Court only gave permission to correct the briefs, but not the statements of fact. We did not read the Court's order that way, but this Court will know if the filings we timely made on July 8 complied with the Court's order and will rule accordingly.[13]

However, the dismissal of Plaintiffs' summary judgment motions on that basis would yield little for Defendants. Plaintiffs' filings in response to Defendants' summary judgment motions, including Plaintiffs' Joint Memorandum and responses to Defendants' joint and individual fact statements – whose strict compliance with the Court's scheduling order Defendants do not (and cannot) in any way challenge -- make clear Plaintiffs' entitlement to

---

[12] Defendants are not correct with regard to *Baldoni v. State Farm* that we failed to file with the Court on June 30 a statement of undisputed facts or a memorandum in support of Baldoni's summary judgment motion. *See* Declaration of Ira Neil Richards dated July 26, 2010 ("Richards Decl.").

[13] While Plaintiffs filed their papers under seal to accommodate Defendants, *see* Richards Decl., Defendants did not feel so constrained. As a consequence, certain of Defendants failed to protect Plaintiffs' personal information. *See* Local Rule 5.1.3.

9

summary judgment. *See, e.g., Missouri Pacific Railroad v. National Milling Co.*, 409 F.2d 882, 885 (3d Cir.1969) (summary judgment properly awarded to non-moving party in absence of cross-motion where record supported result); *Plouse v. Richardson*, 334 F.Supp. 1086, 1088-89 (W.D. Pa. 1971) ("Although plaintiff has not submitted a cross motion therefore, the great weight of authority favors granting summary judgment to the non-moving party in a proper case.").

## CONCLUSION

For the foregoing reasons, and for the reasons expressed in Plaintiffs' opening briefs and in Plaintiffs' Joint Brief in Opposition to Defendants' Motions for Summary Judgment, Plaintiffs' motions for summary judgment should be granted.

DATE: July 26, 2010

TRUJILLO RODRIGUEZ & RICHARDS, LLC

By: _____
Ira Neil Richards (Atty. I.D. 50879)
Kenneth I. Trujillo (Atty. I.D. 46520)
Gary M. Goldstein (Atty. I.D. 81225)
Jennifer Agnew (Atty. I.D. 206673)
1717 Arch Street Suite 3838
Philadelphia, PA 19103
Telephone: (215) 731-9004
Facsimile: (215) 731-9044

Joseph E. Mariotti
CAPUTO & MARIOTTI, P.C.
730 Main Street
Moosic, Pennsylvania 18507
Telephone: (570) 342-9999
Facsimile: (570) 457-1533

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Plaintiffs' Joint Reply Memorandum of Law in Support of Plaintiffs' Motions for Summary Judgment was filed electronically, and is available for viewing and downloading from the ECF system pursuant to Local Rule of Civil Procedure 5.1.2(8), on this 26th day of July 2010. This electronic filing constitutes service on the following counsel:

William C. Foster
Marshall, Dennehey, Warner, Coleman & Goggin
1845 Walnut Street, Suite 1600
Philadelphia, PA 19103
wcfoster@mdwcg.com

Attorney for Defendant Peerless Ins. Co.

Mathieu Shapiro
Obermayer, Rebmann, Maxwell & Hippel, LLP
1617 John F. Kennedy Blvd
19th Floor, One Penn Center
Philadelphia, PA 19103
mathieu.shapiro@obermayer.com

Attorney for Defendants Allstate Indemnity Ins. Co., Allstate Property & Casualty Ins. Co., Allstate Insurance Co., and Encompass Ins. Co.

Robert N. Feltoon
Conrad O'Brien PC
1515 Market St., 16th Floor
Philadelphia, PA 19102
rfeltoon@conradobrien.com

Attorney for Defendant Progressive Ins. Co.

James T. Moughan
Britt, Hankins & Moughan
Two Penn Center Plaza, Suite 515
1500 John F. Kennedy Blvd.
Philadelphia, PA 19102
jmoughan@britthankins.com

Attorney for Defendant State Farm Ins. Co.

G. Frank McKnight, IV
Michael R. Nelson
Nelson, Levine, deLuca & Horst
518 Township Line Road, Suite 300
Blue Bell, PA 19422
fmcknight@nldhlaw.com
mnelson@nldhlaw.com

Attorneys for Defendants Nationwide Ins. Co. of America and Nationwide General Ins. Co.

DATE: July 26, 2010

TRUJILLO RODRIGUEZ & RICHARDS, LLC

By: _____
Ira Neil Richards (atty. I.D. 50879)