**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GARY WILLISCH, et al. | : | CIVIL ACTION |
| v. | : | NO.: 09-5276 |
| NATIONWIDE INSURANCE COMPANY OF AMERICA | : | |

| | | |
|---|---|---|
| DEBORAH KOLESAR, et al. | : | CIVIL ACTION |
| v. | : | NO.: 09-5510 |
| ENCOMPASS INDEMNITY COMPANY | : | |

| | | |
|---|---|---|
| NICOLE MECADON | : | CIVIL ACTION |
| v. | : | NO.: 09-5511 |
| ALLSTATE INDEMNITY COMPANY | : | |

| | | |
|---|---|---|
| RONALD BUCARI, et al. | : | CIVIL ACTION |
| v. | : | NO.: 09-5512 |
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY | : | |

| | | |
|---|---|---|
| ROBERT BESECKER, et al. | : | CIVIL ACTION |
| v. | : | NO.: 09-5513 |
| PEERLESS INDEMNITY INSURANCE COMPANY | : | |

| | | |
|---|---|---|
| ALBERT BALDONI | : | CIVIL ACTION |
| | : | |
| v. | : | NO.: 09-5514 |
| | : | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY | : : | |

| | | |
|---|---|---|
| PAMELA LOWE-FENICK, JAMES BOYLE SR., et al. | : : | CIVIL ACTION |
| | : | |
| v. | : | NO.: 09-5515 |
| | : | |
| PROGRESSIVE SPECIALTY INSURANCE COMPANY | : : | |

| | | |
|---|---|---|
| ANN WARRICK, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | NO.: 09-6077 |
| | : | |
| ALLSTATE INSURANCE COMPANY | : | |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT**

Plaintiffs' core argument, which they state repeatedly, is that "the statute mandates application of the discount to *all* qualifying vehicles, *not to some vehicles*, or even to nearly all vehicles." (*See, e.g.,* Pls.' Mem. in Support of Class Certification Motion Against Allstate at 26 (emphasis added).) Plaintiffs' position is untenable under the plain language of the statute, is internally inconsistent, and is fundamentally flawed for at least the following reasons, each of which is discussed below:

- It does not account for vehicles that contain antitheft devices as optional or aftermarket equipment;

- It cannot be reconciled with the Legislature's decision to impose the requirement on insurers to notify applicants and insureds that this discount is available for qualifying vehicles. Tellingly, Plaintiffs have made no effort to explain how their theory remains sound given that statutory directive;

- It is refuted by the legislative history of the MVFRL and the Insurance Department's interpretation of how the statute was intended to operate;

- It disregards the statutory definition of "passive antitheft device"; and

- It ignores the undisputed fact that the available information on antitheft devices in vehicles, even today, is incomplete, inaccurate, and inconsistent.

1. ***Plaintiffs' Theory Fails to Account for Vehicles that Contain Antitheft Devices as Optional or Aftermarket Equipment***

The MVFRL makes no distinction between qualifying devices that are standard equipment and devices that are either optional or installed aftermarket. Therefore, *if* Plaintiffs' interpretation is correct, and the General Assembly intended to impose strict liability upon insurers for failing to give the discount to everyone who is entitled to it, then it must have intended to impose strict liability for *all* qualifying vehicles as Plaintiffs contend. But that is not the way Plaintiffs themselves actually read the statute, because they artificially limit their claims only to devices installed as "standard" equipment.

Knowing the vehicle's make, model, and year will <u>not</u> allow an insurer to determine whether a vehicle contains an optional device or a device that was installed

aftermarket. This is not a picayune detail, because in 1990 only one manufacturer installed engine immobilizers as standard equipment (and only as to certain models). (Mangine Rep. (App. 359 at 9221) at 6.) As both Plaintiffs' and Defendants' expert witnesses acknowledge, some vehicles come equipped with antitheft devices as optional equipment, while other vehicles contain antitheft devices of various kinds that were installed as aftermarket enhancements. (Mangine Rep. (App. 359 at 9221) at 3; King Rep. (App. 247 at 5115) at 2, 25.) In both situations, merely knowing the make, model, and year could not possibly allow an insurer to determine that the vehicle contains a qualifying device. Consequently, the insurer necessarily is dependent upon the insured for relevant information. Defendants raised this shortcoming of Plaintiffs' theory in their opening brief, yet Plaintiffs have made no attempt to explain how their case can proceed in the face of this fatal defect. (*See* Memorandum in Support of Defendants' Joint Motion for Summary Judgment (hereinafter "Opening Brief") at 27.)

The availability of optional and aftermarket devices illustrates one of the fundamental flaws in Plaintiffs' interpretation of the MVFRL. Plaintiffs maintain that an insurer must determine for itself, with no input from the insured beyond the VIN, whether the insured's vehicle contains a qualifying antitheft device. But an insurer cannot determine on its own whether a vehicle has an optional or aftermarket device; *only the insured* possesses that information. Thus, Plaintiffs' interpretation leads to an impossible result: an insurer violates the statute when it fails to apply the antitheft device discount to a vehicle containing an optional or aftermarket device, even though the only source of information available to the insurer is the insured. That result cannot be what the General Assembly intended. *See* 1 Pa. Cons. Stat. § 1922(1).

### 2. Plaintiffs' Theory Is Refuted by the General Assembly's Inclusion of the Notice Requirement

As discussed in Defendants' Opening Brief, one of the initially proposed versions of the antitheft device discount provision stated that "all insurance companies . . . *shall reduce the premiums* for comprehensive coverage for all insured vehicles equipped with passive antitheft devices." (Defendants' Joint Statement of Undisputed Facts (hereinafter "Joint SOF") ¶ 15, emphasis added; Opening Brief at 15.) That version of the bill contained no notice requirement. (*See* Joint SOF ¶¶ 14-16.) The joint House/Senate Conference Committee rejected that version, replacing "shall reduce the premiums" with "shall provide a premium discount" and adding the requirement that insurers notify applicants and insureds that the discount is "available" for cars with qualifying devices. (Joint SOF ¶¶ 18, 20-21.)

The General Assembly's decision to impose the notice requirement, while simultaneously removing language that required insurers to "reduce the premiums" for qualifying vehicles, refutes any notion that the legislature intended to impose the type of strict liability contemplated by Plaintiffs. If, as Plaintiffs claim, the General Assembly intended for insurers to reduce premiums with no input from insureds, the General Assembly would not have required insurers to also provide notice that the discount is "available."[1] *See IUE-CWA v. Visteon Corp. (In re Visteon Corp.)*, ___ F.3d ____, 2010

---

[1] *Liss & Marion P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652 (Pa. 2009), cited by Plaintiffs, is inapposite. The issue there was what statutory rate for photocopying fees applied to electronic medical records; no issue existed regarding either what was or was not an electronic record or whose burden it was to make that determination. *Liss* is distinguishable (or completely irrelevant) because the court never addressed whether the defendant was entitled to rely on information from the customer, as that simply was not at issue. Plaintiffs here leap from the absence of any discussion on an issue that was not addressed to the illogical conclusion that the court specifically chose not to impose a burden on the customer. (*See, e.g.*, Pls.' Mem. at 7: "Notably, the Court did not read

3

WL 2735715, at *7 (3d Cir. July 13, 2010) ("The words of a statute are not to be lightly jettisoned by courts looking to impose their own logic on a statutory scheme. . . . 'Courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'") (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-254 (1992)). Plaintiffs' suggestion that the notices are merely "advisory" is unavailing and unsupported.

The legislative history indicates that the General Assembly intended sections 1799.1 and 1791.1 to work in tandem, requiring insurers to make a mandatory offering of an antitheft device discount, notifying consumers of its availability, and allowing consumers to take advantage of it. This understanding of the legislative intent is confirmed by Constance Foster, who participated in drafting the MVFRL while serving as Pennsylvania's Insurance Commissioner, and is consistent with the common law principle that insurers are entitled to rely upon their policyholders for accurate information. (*See* Opening Brief at 12-13, 17.)

This understanding is also confirmed by the Insurance Department's Automobile Insurance Guide (never mentioned by Plaintiffs), which expressly advises consumers that they should have information regarding antitheft devices available when they apply for coverage. (*See* Joint SOF ¶ 26.) Plaintiffs suggest this Court should not defer to the Insurance Department's interpretation of the MVFRL. (Pls.' Joint Mem. of Law in Opp. to Defs.' Mots. for Summ. J. (hereinafter "Pls.' Mem.") at 13-14.) Defendants have never maintained that the Court must defer to the interpretation embodied in the Automobile Insurance Guide. Instead, Defendants invoke the uncontroversial

---

into that statute any condition requiring someone other than the copy services to take steps to apply the mandated rates.")

proposition that the Court's interpretation "'is appropriately informed by the approach of the expert administrative agency.'" (Opening Brief at 28, quoting *Nationwide Ins. Co. v. Schneider*, 960 A.2d 442, 450 n.8 (Pa. 2008).)

Further, contrary to Plaintiffs' assertions, the MVFRL's general cost-reduction purpose does not mandate a different result. Pennsylvania courts cannot disregard clear statutory language merely to effectuate general legislative intent. *See* 1 Pa. Cons. Stat. § 1921(b). In any event, the cost-reduction policy cuts against Plaintiffs' stated position. As noted in the Joint Summary Judgment Briefs, information regarding which vehicles contain passive antitheft devices was not readily available in 1990 (and is not readily available in 2010). Plaintiffs' curt response – "get better data" (Pls.' Mem. at 24) – reflects their assumption that the General Assembly simply did not care about the cost of compliance. Such an assumption is untenable given the General Assembly's focus on cost reduction.

### 3. *Plaintiffs Have Failed to Establish that Complete and Accurate Information is Available to Insurers*

In order to prevail on their statutory interpretation position and avoid a result that is "impossible of execution," Plaintiffs must establish that Defendants could readily and accurately determine for themselves whether each and every car they insure in Pennsylvania has a qualifying antitheft device. 1 Pa. Cons. Stat. §§ 1921(c)(6), 1922(1). After the facts revealed in discovery exposed their weakness on this critical point, Plaintiffs repeatedly changed their position. The deficiencies in each of Plaintiffs' asserted positions have been addressed in detail in Defendants' prior submissions, but in summary:

- Plaintiffs first asserted in their Complaints that Defendants can obtain the requisite information from the Internet in a matter of seconds. This allegation has

5

been shown to be false and Plaintiffs have abandoned it. (*See* Opening Brief at 19-21.)

- Plaintiffs then asserted that Defendants can obtain the requisite information directly from the VIN. This is not true and Plaintiffs have abandoned this theory as well. (*See* Opening Brief at 23; Joint SOF ¶¶ 44-45.)

- Plaintiffs then asserted that Defendants can obtain the requisite information from one of several third party sources. But the record belies this contention. (*See* Opening Brief at 23-28; Joint SOF ¶¶ 41, 42, 58-61, 70, 75-78, 83, 91, 94, 96-97, 99.)

- Plaintiffs then asserted that Defendants can obtain the requisite information from some combination of third party sources. Again, the record demonstrates this not to be true. (*See* Opening Brief at 24-28; Joint SOF ¶¶ 41, 46-47.)

- Plaintiffs then asserted that Defendants can obtain the requisite information directly from manufacturers. Again, the record demonstrates this not to be true either. (*See* Opening Brief at 25-26; Joint SOF ¶¶ 92, 103, 107, 108.)

In their latest brief, and implicitly acknowledging that no single or combined source of accurate information exists, Plaintiffs now claim each Defendant should just pick one source and use it to the exclusion of other sources of information. (*See* Pls.' Mem. at 20 (claiming if Defendants "had just checked the data from the sources they relied on for their business, then all the Plaintiffs whose cars they insure would have received the required discount").) This latest iteration of Plaintiffs' argument ignores the demonstrated fact that doing so necessarily would result in incomplete, inaccurate and inconsistent application of the statutory discount. Indeed, whether or not the discount is granted on a particular model car would depend entirely on which information source an insurer happens to use. Such an approach would plainly violate Plaintiffs' stated premise that *all* qualifying vehicles must receive the statutory discount. It would also result in exactly the type of "inconsistent" application of the statute that Plaintiffs attempt to charge upon Defendants.

6

Plaintiffs' response to the "time lag" issue is equally telling. Under Plaintiffs' approach, new car models for which antitheft information is not yet available are still entitled to the discount without input from the insured. Specifically, Plaintiffs contend Defendants should use information about prior models of the same car (assuming there are any) to divine whether new models do or do not have a qualifying passive antitheft device. In other words, Plaintiffs' position is that Defendants should simply "guess." But what happens if an insurer guesses wrong? Does the insurer remain liable under the statute? This "catch 22" further highlights the untenable nature of Plaintiffs' overall position.

4. *Plaintiffs' Theory Entirely Ignores the Statutory Definition of "Passive Antitheft Device"*

When confronted with the MVFRL's narrow definition of "passive antitheft device," Plaintiffs ask the Court to disregard the statutory language entirely and rule instead that all "engine immobilizers" are entitled to the discount regardless of whether the particular device meets the definition of the statute. This is yet another artificial argument Plaintiffs have constructed to avoid the many deficiencies in their case.

Under Pennsylvania law, courts must apply statutory definitions, regardless of whether such definitions differ from ordinary usage and regardless of whether the court agrees with those definitions. (*See* Opening Brief at 30-32.) Plaintiffs ignore this legal tenet, which is fatal to their claims. Instead, they argue that the General Assembly's definition should simply be disregarded because Defendants have elected to give the discount to policyholders whose vehicles did not fit the narrow statutory definition. Plaintiffs offer no authority for their proposition that this Court can disregard clear statutory language based on how *private* insurance companies have chosen to act in a

7

competitive marketplace. Plaintiffs also offer no authority for their proposition that this Court should ignore the General Assembly's definition because antitheft devices developed *after* the MVFRL's enactment render the definition outdated, and the law is to the contrary as Defendants have shown. (*See* Opening Brief at 22.)

Plaintiffs also ask the Court to ignore the statutory definition because (a) doing so will somehow favor the public interest, (b) broadening the pool of vehicles that qualify for the discount is consistent with the legislature's intent to reduce the cost of auto insurance, and (c) applying the statutory definition will produce an allegedly absurd result. (Pls.' Mem. at 33.) None of these arguments has any merit because courts cannot disregard clear statutory language to effectuate general legislative intent, even in the face of changing technology. Changing technology does not make the reading of the statute today "absurd;" it makes the statute obsolete.[2] The proper resolution of such a problem is through the General Assembly or the Insurance Department, which has been delegated the authority to further define "passive antitheft device" via regulation.[3]

---

[2] For this reason, Plaintiffs' argument that the opinions proffered by Defendants' expert on antitheft devices, Robert Mangine, renders the plain language reading of the statute absurd is without merit. First, while *Plaintiffs'* theory of the case is dependent upon their ability to establish that each Plaintiff's vehicle contains a qualifying "passive antitheft device" under the statute, in order for *Defendants* to obtain summary judgment on the grounds set forth in their motions, there is no need for this Court to address this factual issue. Second, simply because Mangine's report summarizes the history and development of the most prevalent antitheft devices today, with a particular focus on the engine immobilizers on which Plaintiffs fixate, does not mean that a device satisfying the statutory definition did not exist twenty years ago in 1990. As Mangine stated in his report, "Excluding mechanical interlock devices, no systems *referred to today* as 'passive anti-theft devices' activate automatically when the key is turned to the off position." (Mangine Rep. (App. 359 at 9221) at 9 (emphasis added).)

[3] A further example of Plaintiffs' arbitrary and artificial approach to statutory construction concerns car alarms, which Plaintiffs contend in the suit against Progressive fall under the statutory definition (likely only because one of the plaintiffs in that case has
8

### 5. *Defendants Have Satisfied Section 1791.1 as a Matter of Law*

Though Plaintiffs admit that (1) Defendants actually provided them with the requisite 1791.1 notices[4] and (2) the statute does not prescribe any required language or form for the notices, (*see* Pls.' Mem. at 29,) Plaintiffs attack the substance of certain of Defendants' notices as "legalese" and "technical jargon."[5] Plaintiffs' position is meritless under the facts and the law.

There is nothing that is difficult to understand about any of Defendants' notice forms. Those notices actually satisfy the only substantive requirement imposed by Section 1791.1 – *i.e.*, to "stat[e] that *discounts are available* for drivers who meet the requirements of . . . 1799.1."[6] 75 Pa. Const. Stat. Ann. § 1791.1(c) (emphasis added); *see also* notices cited *supra* at FN 1. And, each of the notices expressly invites the recipient

---

an alarm in her car but not an immobilizer), but make no such claim in the other cases pending before this Court. Plaintiffs' inclusion of alarms in only one of these cases is nonsensical, since either car alarms fall under the statute at issue in all the cases or they do not.

[4] *See* App. 9 at 00333 (Allstate Property & Casualty); App. 10 at 0334 (Allstate Ins. Co.); App. 12 at 00337 (Allstate Indemnity notice); App. 13 at 00338 (Encompass); App. 71 at 01266-67 (Nationwide); 2:09-cv-05513, doc. # 39 (Peerless SOF) ¶ 9 (citing Peerless's notice at Ganley aff., exh. R); App. 158 at 03683-84 (State Farm); App. 306 at 06933 (Progressive).

[5] Plaintiffs' opposition brief makes no reference to the notices provided to insureds by Peerless and State Farm under Section 1791.1. In failing to oppose Defendants' summary judgment motion in this respect, Plaintiffs have tacitly conceded that at least these two notices satisfy the requirements of Section 1791.1. Accordingly, at a minimum, Peerless and State Farm are entitled to summary judgment on this issue.

[6] While these notices are not required to be filed with the Pennsylvania Department of Insurance, some Defendants, out of an abundance of caution, did file their notices and received approval of the language by the Department of Insurance. *See, e.g.,* App. 306 at 06933 (Progressive notice); App. 71 at 01267 (Nationwide notice).

12516090v.1

to contact his insurance agent for additional information or clarification if he believes he may qualify for one of the described discounts:

- "Please contact your independent insurance agent if you have questions . . . or to determine if you qualify for . . . discounts." Peerless SOF ¶ 9 (citing Peerless notice at Ganley aff., exh. R).

- "If you feel you qualify for . . . discounts or have a question . . . please contact your State Farm Agent." App. 158 at 03686 (State Farm notice).

- "If you have any questions or . . . believe you qualify for discounts . . . your Nationwide Agent will . . . assist you." App. 71 at 01267 (Nationwide notice).

- "If you feel you may qualify for additional credits please contact your independent agent." App. 13 at 00338 (Encompass notice).

- "For more information about any of the discounts we offer, please contact your agent, broker, or company." App. 9 at 00333, App. 10 at 0334, and App. 12 at 00337 (Allstate notices).

- "See your agent for details." App. 306 at 06933 (Progressive notice).

This language speaks – in plain English – for itself and clearly informs insureds that an antitheft device discount may be available. Section 1791.1 requires nothing more.

Date: July 26, 2010

                        Respectfully submitted,

BY:   /s/ Robert N. Feltoon
       Robert N. Feltoon, Esquire
       PA# 58197
       Deborah J. Krabbendam, Esquire
       PA# 41856
       CONRAD O'BRIEN P.C.
       1515 Market Street, 16th Floor
       Philadelphia, PA 19102
       Tel: (215) 864-9600
       Fax: (215) 864-9620
       Attorneys for Defendant Progressive Specialty Insurance Company

BY: /s/ James T. Moughan
James T. Moughan, Esquire
PA# 33045
BRITT, HANKINS & MOUGHAN
Two Penn Center Plaza, Suite 515
15th Street and JFK Boulevard
Philadelphia, PA 19102
Tel: (215) 569-6936
Fax: (215) 569-3711
Attorney for Defendant State Farm Mutual
Automobile Insurance Company


BY: /s/ Michael R. Nelson
Michael R. Nelson, Esquire
PA# 65679
G. Franklin McKnight IV, Esquire
PA# 85701
NELSON LEVINE de LUCA &
HORST, LLC
518 Township Line Road
Suite 300
Blue Bell, PA 19422
Tel: (215) 358-5100
Fax: (215) 358-5101
Attorneys for Defendant Nationwide
Insurance Company of America


BY: /s/ Mathieu J. Shapiro
Thomas A. Leonard, Esquire    PA# 14781
Mathieu J. Shapiro, Esquire    PA# 76266
OBERMAYER REBMANN MAXWELL &
HIPPEL LLP
1617 John F. Kennedy Boulevard
19th Floor, One Penn Center
Philadelphia, PA 19103-1895
Tel: (215) 665-3000
Fax: (215) 665-3165
Attorneys for Defendants Allstate Insurance
Company, Allstate Property & Casualty
Insurance Company, Allstate Indemnity
Company, and Encompass Indemnity
Company

11

BY: /s/ William C. Foster
William C. Foster, Esquire
PA#03511
MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
1845 Walnut Street
Philadelphia, PA 19103
Tel: (215) 575-4551
Fax: (215) 575-0856
Attorney for Defendant Peerless Indemnity
Insurance Company

# CERTIFICATE OF SERVICE

I, hereby certify that on July 26, 2010, I served the foregoing **Reply Memorandum In Support of Defendants' Joint Motion for Summary Judgment** by electronic filing:

| | |
|---|---|
| Jennifer E. Agnew | Joseph E. Mariotti |
| Ira Neil Richards | CAPUTO & MARIOTTI, P.C. |
| Kenneth I. Trujillo | 730 Main Street |
| TRUJILLO RODRIGUEZ | Moosic, PA 19103 |
| & RICHARDS, LLC | Jmariotti@verizon.net |
| 1717 Arch Street, Suite 3838 | |
| Philadelphia, PA 19103 | |
| jagnew@trrlaw.com | |
| ira@trrlaw.com | |
| avis@trrlaw.com | |
| jromero@trrlaw.com | |
| ktrujillo@trrlaw.com | |

BY: /s/ Robert N. Feltoon
Robert N. Feltoon, Esquire
PA# 58197
Deborah J. Krabbendam, Esquire
PA# 41856
CONRAD O'BRIEN P.C.
1515 Market Street, 16th Floor
Philadelphia, PA 19102
Tel: (215) 864-9600
Fax: (215) 864-9620
Attorneys for Defendant Progressive Specialty Insurance Company

BY: /s/ James T. Moughan
James T. Moughan, Esquire
PA# 33045
BRITT, HANKINS & MOUGHAN
Two Penn Center Plaza, Suite 515
15th Street and JFK Boulevard
Philadelphia, PA 19102
Tel: (215) 569-6936
Fax: (215) 569-3711
Attorney for Defendant State Farm Mutual Automobile Insurance Company

BY: /s/ Michael R. Nelson
Michael R. Nelson, Esquire

PA# 65679
G. Franklin McKnight IV, Esquire
PA# 85701
NELSON LEVINE de LUCA & HORST, LLC
518 Township Line Road
Suite 300
Blue Bell, PA 19422
Tel: (215) 358-5100
Fax: (215) 358-5101
Attorneys for Defendant Nationwide Insurance
Company of America


BY: /s/ Mathieu J. Shapiro
Thomas A. Leonard, Esquire    PA# 14781
Mathieu J. Shapiro, Esquire    PA# 76266
OBERMAYER REBMANN MAXWELL &
HIPPEL LLP
1617 John F. Kennedy Boulevard
19th Floor, One Penn Center
Philadelphia, PA 19103-1895
Tel: (215) 665-3000
Fax: (215) 665-3165
Attorneys for Defendants Allstate Insurance
Company, Allstate Property & Casualty Insurance
Company, Allstate Indemnity Company, and
Encompass Indemnity Company


BY: /s/ William C. Foster
William C. Foster, Esquire
PA#03511
MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
1845 Walnut Street
Philadelphia, PA 19103
Tel: (215) 575-4551
Fax: (215) 575-0856
Attorney for Defendant Peerless Indemnity
Insurance Company